[No. 4989.]

IN THE MATTER OF THE ESTATE OF WM. McCAUS-LAND, DECEASED.

WITNESSES.—The third subdivision of sec. 1880 of the Code of Civil Procedure, providing that "parties to an action or proceeding, or in whose behalf an action or proceeding is prosecuted, against an executor or administrator, upon a claim or demand against the estate of the deceased," cannot be witnesses, has no application to a party claiming a family allowance.

FAMILY ALLOWANCE.—An application for a family allowance is not an action or proceeding within the above section.

CLAIM OR DEMAND—DEFINITION OF.—Such words are used synonymously, and in the Probate Act have reference to such debts or demands against the decedent as might have been enforced against him in his lifetime, by personal action, for the recovery of money, and upon which only a money judgment could have been rendered. Such definition does not include a family allowance.

MARRIAGE.—A marriage is sufficiently established if there is evidence of a marriage in the present and also a contract *per verba de futuro, cum copula.*

CONFLICT OF TESTIMONY.—If the testimony is conflicting, the finding of the Court below will not be disturbed.

APPEAL from the Probate Court of the County of Santa Clara.

In 1874, William McCausland died intestate in the City and County of San Francisco, leaving an estate situated partly in San Francisco and partly in Santa Clara County. Letters of administration were issued by the Probate Court of Santa Clara County to the Public Administrator of that county. Annie F. McCausland subsequently filed a petition alleging that she was

the widow of the deceased, and her child the legitimate offspring of McCausland, and prayed for an order allowing her a monthly allowance out of the estate for her support during the administration. The heirs of the deceased denied that Annie F. was the widow of deceased, and claimed that the cohabitation was wholly meretricious. The issues were tried before the Court. The petitioner did not claim that any marriage had in fact ever been celebrated; but contended that there was a valid contract of marriage, both *per verba de præsenti* and *per verba de futuro*, *cum copula*. The Court found in favor of petitioner, and made an order granting a family allowance. The heirs appealed.

*Campbell, Fox & Campbell*, for Appellants.

1. We claim that the whole evidence does not show honest consent to assume the status of husband and wife and consummation predicated thereon, but continued illicit intercourse.

Secs. 68, 69, 70, 71, 72, 73, 74, 75: Persons marrying without the solemnization of, (sec. 70) to make a declaration of marriage (76) in presence of witness, (77) to be acknowledged and recorded. None of these things were done.

A mode of establishing and proving a marriage without solemnization being thus provided by statute, no other proof can establish it.

*Town of Milford* v. *Worcester*, 7 Mass. 48: Where there are State laws governing marriage, they must be pursued.

Where parties are living in a meretricious way, a promise to marry in future is not marriage, though cohabitation continue. In this case at bar, in January, 1873, he promised to marry her on the 4th of July, but did not. (3 Bradf. 432; *Hill* v. *Burger*, 442, and following; *Holmes* v. *Holmes*, 1 Sawy. 9.)

2. We contend that the Court erred in allowing claimant to testify. Our objection was founded on subdivision 3, sec. 1880, Code Civil Procedure, *as amended:*     *     *     *     "Parties to an action or *proceeding*, or in whose behalf an action or proceeding is prosecuted against an executor or an administrator upon a claim or demand against the estate of the deceased."

The first provision on this point was sec. 393 of the old Pro-

cedure Act, restricting the testimony as against the representatives of deceased; it was general in its application, and not confined to technical "claims."

That section was repealed, (Statutes 1869–70, p. 622) and no restriction was imposed upon the testimony of a party against the representative of a deceased.

In this condition the spirit of sec. 393 above referred to was re-enacted in the new subdivision I have quoted above. The language appears *ex industria* to have been made as broad and comprehensive as possible. It speaks of "claims and demands"; it speaks of "an action or proceeding," and its language covers this case.

This is a proceeding before a Court in which claimant seeks to enforce by law a claim for family allowance. Claimant *claims* in this proceeding an allowance against the estate during its settlement.

When the language sanctions, Courts will extend the construction to meet the evils intended to be prevented. (*Davis* v. *Davis*, 26 Cal. 34.)

*J. E. McElrath*, for Respondent.

The objection that the evidence showed the marriage to have been meretricious is answered by the decision of the Probate Court.

DECISION OF PROBATE COURT.

" Letters of administration upon decedent's estate having been granted, and an inventory having been returned as required by law, the petitioner, Annie Forrester McCausland, claims as his widow the benefit of the statute which provides for a family allowance during administration. The marriage of the petitioner with decedent controverted by the heirs, and there being no allegation or evidence of a ceremonial marriage, resort must be had to such presumptions and inferences as may be fairly derived from the acts and declarations of the parties.

" This is said to be an inferior species of evidence from the fact that great care has been taken to have so solemn an engagement as marriage entered into in a manner that puts all doubts

on the subject, and danger to the legitimacy of the offspring, out of the question.

" But it will not be denied that under our law consent to and subsequent consummation of marriage may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases.

" The proof does not depend upon the observance of any particular form or ceremony, but upon those broad principles of evidence which all Courts invoke for the purpose of ascertaining the truth.

" It is unnecessary to refer to authorities in support of this conclusion, as the law holding marriage to be a civil contract, which, in the absence of positive proof, may be inferred from proof showing an assumption of marital rights, duties, and obligations, is too well established to need discussion.

" When cohabitation and acknowledgment of the parties that they are man and wife are relied upon as evidence from which an actual marriage may be inferred, the difficulty encountered is in determining the character of the cohabitation, and under what circumstances and for what purpose the acknowledgments were made. If the cohabitation is shown to be meretricious, it furnishes no presumption of marriage, nor does an acknowledgment that they are man and wife furnish evidence of the marital relation, if made casually, and to accomplish a temporary purpose.

" But the meretricious nature of the cohabitation is a subject of proof and not of inference, because no man is to be presumed to live in violation of law and the ordinary rules of decency and decorum. The presumption against a notorious act of immorality is almost as strong as against the commission of a legal crime—and when a man and woman live together in the way of husband and wife, have children born to them, and hold themselves out as sustaining toward each other that honorable relation, all presumptions are in favor of the existence of the marriage contract.

" The proof in the present case shows that the deceased became acquainted with petitioner in 1860, when she was only about thirteen years of age; that he paid his addresses to her

several months, and then proposed marriage; that she at first refused on account of her age, and the supposed opposition of her sister; that subsequently she consented to become his wife, and that they thereupon commenced a cohabitation which the heirs insist was meretricious, and which she claims was matrimonial and such as the law sanctions.

" To sustain her claim she has produced a large number of witnesses who testify to acts and declarations of the deceased, all tending in a greater or less degree to show that he regarded her as his wife.

" In Sacramento, in 1862, he introduced her to many of his intimate friends as his wife, and invariably spoke of her as such.

" In 1866, he employed Dr. Behrens to attend her in her confinement and introduced him to her as his wife, and they were known among their acquaintances both before and after that event as husband and wife.

" The proof is conclusive, that from some time in the spring of 1873, until his death in 1874, the parties lived and cohabited in San Francisco as man and wife, and were known as such at places where they stopped. She was constant in her attendance upon him during his last sickness, watched over and tenderly cared for him, and did everything that a faithful wife could do to relieve his sufferings.

" To rebut the presumption which would naturally arise from the case as made by the petitioner, the contestants have not attempted to impeach her character or show that she was untrue to him, but they rely principally upon the testimony of his intimate friends and acquaintances who always looked upon him as a single man, and never heard from him or from any other source that he was married.

" The weight to be given to this testimony is considerably lessened when we consider his well-known reticence in regard to his private affairs.

" It is in proof that his conversation at all times and on all occasions was in reference to the business in which he was engaged, and that his private affairs seldom, if ever, became the subject of comment.

" If an allusion was made to anything which he considered

in its nature personal he would either resent it as an insult or give the party to understand that that was a matter about which he did not care to converse.

" Hence it is not surprising that those who consider themselves as his intimate acquaintances should have little or no information from him respecting the petitioner or his relations with her.

" But, at most, this species of evidence is of a negative character, and while like every other circumstance is to be considered in determining a question of this kind, yet it cannot be allowed to overcome presumptions arising from positive acts and declarations.

" That she intended marriage as the result of her engagement and subsequent intercourse admits of no doubt; and whatever reserve there may have been in his mind, if his acts constitute an assumption of marital duties and obligations, his mental reservation can make but little difference in the matter.

" It is sufficient to know that all the elements of the marriage contract, such as mutual agreement, declarations, and cohabitation, have been proved in this case ; and as the deceased was willing to recognize and treat her as his wife, and make her the mother of his children, so the next of kin must allow her to participate in his estate.

" It follows, therefore, that the petitioner, as the widow of deceased, is entitled to an allowance out of his estate for her support during administration of one hundred dollars per month, the payments to date from the time of his death.

" D. S. PAYNE,

" Oct. 7th, 1875.                          Probate Judge."

The question as to whether it was error, under sec. 1880, Code Civ. Pro., to permit respondent to testify that she was the widow of deceased, embraces three propositions, to wit:

First—Do the words " claim or demand against the estate of deceased," as used in sec. 1880, include in their meaning the status of widow, for it was in support of her alleged status that petitioner testified ?

Second—Was petitioner's application an action or proceeding against an executor or administrator ?

Third—If the Court still holds that it was "a claim or demand" that petitioner testified in support of, was it not legal for her to so testify, under sec. 1499, Code Civ. Pro., in the discretion of the Court? Said section is as follows:

\*     \*     \*     "When a claim is presented to the Probate Judge for allowance, he may, in his discretion, examine the claimant and others on oath, and hear any legal evidence touching the validity of the claim."

As to the first proposition, the question whether it was error to permit petitioner to testify in support of her status depends upon the meaning of the words "claim or demand" in sec. 1880. If those words include her status, then it was error; otherwise not. It is to be observed that she testified in support of the allegation that she was the "widow." It is respectfully urged that neither of the words "claim or demand" can be extended so as to embrace the alleged error.

"It is," said Mr. Justice NILES in *Pitte* v. *Shipley*, 46 Cal. 160, "it is a familiar principle of construction that a word repeatedly used in a statute will be presumed to bear the same meaning throughout the statute, unless there is something to show that there is another meaning intended." The meaning of this very word "claim" was under consideration, and elicited the above remark from the Justice. The whole Probate Act must be considered in arriving at the intention of the law-maker as to the meaning of the words "claim or demand," and that intent must be sought in the act itself. (Sedgwick on Statutory and Constitutional Law, 243.)

On examining the Probate Act, I find that the words "claim and demand" have been used in the following sections in the act:

"Claim" in secs. 1415, 1449, 1459, 1460, 1469, 1490, 1493, 1494, 1495, 1496, 1497, 1498, 1499, 1500, 1502, 1503, 1504, 1505, 1507, 1510, 1512, 1618, 1622, 1631, 1636, 1645, 1648, 1649, 1650, 1880.

"Demand" in secs. 1415, 1448, 1459, 1460, 1643, 1644, 1880.

An examination of the connection in which these words are used in all of the above sections—except sec. 1880, where the context does not show the meaning—is almost demonstrative that

they are used in the sense of debt.  ·At the risk of being tedious, I beg to refer the Court to one or two sections showing the sense in which these words are used in all the sections, except sec. 1880.

" Sec. 1510.   If the executor or administrator is a creditor of the deceased, his *claim*, duly authenticated," etc.

Here *claim* is equivalent to *debt.*

" Sec. 1497.   Every *claim* allowed by the executor or administrator, and approved by the probate judge,   *   *   *   must be ranked among the acknowledged debts of the estate, and paid in due course of administration."

Here *claim* means *debt.*

" Sec. 1494.   Every *claim* presented to the administrator must be supported by the affidavit of the claimant   *   *   * that the amount is justly due, that no payments have been made thereon, and that there are no offsets."

Here *claim* means *debt.*

" Sec. 1448.   No discharge or bequest in a will, of any debt, *demand*, etc., shows that *demand* is used as equivalent to debt, and it bears the same meaning throughout the statute."

If " family support " were a " claim or demand " there would be an irreconcilable difference between sec. 1467 and sec. 1643. (Code Civil Procedure.)

In sec. 1467 it is provided that " any allowance   *   *   * must be paid in preference to all other charges except funeral charges and expenses of administration."   In sec. 1643, it would, if a " demand " be the last thing to be paid—which certainly is not the intention of the law-makers.

In *Fallon* v. *Butler*, 21 Cal. 32, Mr. Justice FIELD said : " Whatever signification there may be attached to the term ' claim,' standing by itself, it is evident that in the Probate Act it only has reference to such debts or demands against the decedent as might have been enforced against him in his lifetime, by personal actions, for the recovery of money, and upon which only a money judgment could have been rendered."   It is respectfully contended that the words " claim or demand," as used in sec. 1880, being used with reference to the Probate Act, must be construed to bear the same meaning that those words

do in that act, which I think have been correctly interpreted in *Fallon* v. *Butler*. As a *status* is not a debt, I conclude that there was no error in permitting petitioner to testify.

Secondly. This was not an action or proceeding against an executor or administrator. The statute contemplated that the executor or administrator should be a party *eo nomine*, and here he was not. The application was *ex parte*, and addressed only to the Court.

Thirdly. Any other construction than the meaning I have given to the words " action or proceeding " makes a conflict between sec. 1499 and sec. 1880 ; for by the former the Court has the right, in its discretion, to examine the claimant on oath.

By the COURT:

The petitioner, who claims to be the widow of the deceased, upon the hearing of her petition for a family allowance, was permitted to testify in her own behalf, against the objection of the heirs. The third subdivision of sec. 1880 of the Code of Civil Procedure provides that " parties to an action or proceeding, or in whose behalf an action or proceeding is prosecuted, against an executor or administrator, upon a claim or demand against the estate of the deceased," cannot be witnesses. It is contended that this provision excludes the petitioner.

An application for a family allowance is not an action or proceeding against an executor or administrator. In this respect it is similar to an application for a partial or final distribution of the estate, or the payment of a legacy. The action or proceeding contemplated by the section referred to is one which is adverse to the estate, by which some relief is sought, which will diminish or impair the estate. The case stands, in this respect, as it would do were it conceded that the petitioner is the widow of the deceased, and were she offered as a witness to prove any other fact respecting the family allowance.

The words " claim or demand against the estate of the deceased " ought to receive the same interpretation as they do when found in the several provisions of the Code of Civil Procedure respecting the settlement of the estates of deceased per-

sons. In that connection the words " claim " and " demand "
are used synonymously. (See secs. 1643, 1467, 1448, 1494,
1497, 1510.) In *Fallon* v. *Butler*, 21 Cal. 32, Mr. Chief Justice
FIELD, in delivering the opinion of the Court, said: " What-
ever signification there may be attached to the word ' claim,'
standing by itself, it is evident that in the Probate Act it has
reference to such debts or demands against the decedent as
might have been enforced against him in his lifetime, by per-
sonal actions, for the recovery of money, and upon which only
a money judgment could have been rendered." This definition,
which, in our opinion, is correct, will not include a claim for a
family allowance.

There was evidence tending to prove both a marriage in the
present, and also a contract *per verba de futuro*, *cum copula.*
(1 Bish. on Marriage and Divorce, secs. 253, 443.) This is de-
cisive on that issue, although there was conflicting evidence.

Orders affirmed. Remittitur forthwith.