[S. F. No. 7647.   Department Two.—December 19, 1916.]

In the Matter of the Estate of FRANCIS CUTTING, Deceased. ALICE M. CUTTING, Appellant, v. FREDERICK P. CUTTING et al., as Executors, etc., and PACIFIC UNITARIAN SCHOOL FOR THE MINISTRY, Respondents.

ESTATE OF DECEASED PERSON—ANTENUPTIAL AGREEMENT—WAIVER BY WIDOW OF RIGHT TO FAMILY ALLOWANCE.—An antenuptial agreement, whereby the husband agreed to give his wife proper support during their married life and, in the event of his prior death, to cause to be paid her a specified sum per month during her life, and she agreed that the same should be "in lieu of any and all claims against his property or estate whether community or any other property or interest of his," precludes her from demanding a family allowance from his estate.

ID.—MEANING OF WORD "CLAIMS."—The word "claims," as used in such agreement, is not to be construed as meaning only those demands which might have been enforced against the deceased husband in his

lifetime, and which must be presented in due form of law to the executor or administrator of his estate.

ID.—UNRECORDED MARRIAGE SETTLEMENT.—Such agreement, considered as a marriage settlement, lost nothing of its binding force, as between the parties thereto, because it was unrecorded.

APPEAL from an order of the Superior Court of Alameda County refusing a family allowance. W. S. Wells, Judge.

The facts are stated in the opinion of the court.

A. J. Treat, Paul A. Myers, and Wm. B. Kollmyer, for Petitioner.

Allen L. Chickering, Warren Gregory, and Winfield Dorn, for Respondent Executors.

W. H. Gorrill, for Respondent Pacific Unitarian School for the Ministry.

MELVIN, J.—On April 19, 1913, Francis Cutting and Alice Duren entered into a contract with reference to their contemplated marriage. Mr. Cutting was seventy-nine years of age at the time and Miss Duren was more than forty-five years old. He was a widower possessed of a fortune worth approximately five hundred thousand dollars and was the father of two living adult children. On May 10, 1913, Miss Duren and Mr. Cutting were married. On July 10, 1913, he executed a codicil to his will which had been made prior to his marriage, said codicil operating as a republication of the testament. (*Estate of Cutting*, 172 Cal. 191, [155 Pac. 1002].) Mr. Cutting died on the first day of October, 1913, and his estate is in the course of administration. On January 16, 1915, more than a year after her husband's death, Mrs. Cutting filed a petition for a family allowance of one thousand dollars a month. This application was resisted by Mr. Cutting's two children and by the Pacific Unitarian School for the Ministry, one of the legatees mentioned in the will, and after a hearing it was denied. From the order refusing a family allowance, Alice M. Cutting, widow of Francis Cutting, prosecutes this appeal.

It was admitted by Mrs. Alice M. Cutting at the hearing of her petition that she had received from the executors of the will $250 each month since the death of her husband.

The sole question presented on this appeal is whether or not the monthly payments provided by the contract made before marriage preclude the widow from demanding a family allowance. That contract, which was in writing, was in the following words and figures:

"Ante Nuptial Agreement between Francis Cutting and Alice M. Duren.

"The undersigned, in contemplation of marriage hereby agree that in consideration thereof Francis Cutting will give Alice M. Duren proper support during their married life and should said Francis Cutting die before said Alice M. Duren after their marriage he will cause her to be paid two hundred and fifty ($250) dollars per month during her life which said Alice M. Duren agrees shall be in lieu of any and all claims against the property or estate of said Francis Cutting whether community or any other property or interest of said Francis Cutting and will marry said Cutting at any convenient time requested by said Cutting who also agrees to pay said Alice M. Duren one hundred dollars per month during the time that may elapse prior to marriage and continue during her life should he die before their marriage.

"In witness whereof we have set our hands this nineteenth ·day of April, 1913.

"(Signed)    Alice M. Duren,
"Francis Cutting."

The codicil was as follows:

"Oakland, California.
"July 18" 1913.

"I, Francis Cutting, hereby affirming my will bearing date . Oct 22d 1912 except as herein modified, do hereby declare the following as and to be a codicil to my said will being my last will and testament. After paragraphs numbered 2, 3, 4 having reference to devises benefitting my daughter, also Miss Patterson also my son Frederick P. Cutting, I direct that my executors provide from the remainder of my estate an income for my wife Alice M. Cutting and pay the same to her monthly of two hundred and fifty ($250) dollars per month

as long as she lives, in accordance with an ante nuptial agreement with my said wife and myself of April 1913.

"(Signed)     FRANCIS CUTTING."

At the outset respondents concede that a widow's claim for family allowance is favored by the law, that the law leans strongly toward the wife during probate, and that the independent means of the widow have no material bearing upon her right to a family allowance. Their contention which prevailed in the probate court was that by the terms of the contract, read in view of all of the circumstances surrounding its execution, the appellant surrendered all right to a family allowance, and that such was the distinct understanding of both parties to the agreement.

The same problem is here presented which was before the court on the appeal granting a family allowance in *Estate of Whitney*, 171 Cal. 750, [154 Pac. 855]. On that appeal, the wife's waiver of her right to dispose of any of the community property and her election to take under the will of her husband were held not to be equivalent to a surrender of her privilege to apply for and to receive a family allowance, although the general words of waiver, taken by themselves, would have been sufficient to cut her off from a family allowance, but in getting at the true meaning of the will and the accompanying document executed by the wife of the testator, the court considered the circumstances that Mr. and Mrs. Whitney were negotiating with reference to her community rights, and did not have in mind her possible application for an allowance to be paid to her during probate. The pertinent words of Mrs. Whitney's waiver were as follows: "I hereby elect to accept and acquiesce in the provisions of the said will, and hereby waive all claims to my share of any community property, and any and all other claims that I may have upon any of the estate disposed of by the said will." Commenting upon this language, Mr. Justice Sloss, who delivered the opinion, said: "It may readily be conceded that the general language 'any and all other claims,' etc., would be sufficient, standing by themselves, to cover a claim for family allowance. But the paper is to be read as a whole, in the light of surrounding circumstances and of the other elements of the transaction of which it formed a part." Applying this rule we have no doubt that, in view of all the circumstances and in view, too, of the rules favoring widows

in the construction of all such instruments, the appellant waived all right to the award of a family allowance. In the contract here under review, the parties thereto were not considering a wife's waiver of a community interest. They had in mind, as indicated by the words of the agreement, the proper support during their married life of Mrs. Cutting, and a continuance of that support after Mr. Cutting's death, "in lieu of any and all claims against the property or estate of said Francis Cutting." It is learnedly argued on behalf of appellant that the word "claims," as used in this instrument, must be taken in its technical sense, and understood to mean those demands which might have been enforced against the deceased in his lifetime and which must be presented in due form of law to the executor or administrator of his estate. Of course a family allowance is not such a claim, but is an expense of administration. But appellant did not agree merely to forego any claims she might have against the *estate* of her husband. She promised to forego also any claims against his *property* save and except the monthly allowance of $250. A "claim" against property has no narrow technical meaning like that for which appellant contends. "Claim," as used in connection with property, means a "demand" and nothing more. A demand for a family allowance is a claim against property, and the use of the two words in the instrument indicates that the contracting parties wished to avoid all ambiguity which possibly might have arisen if the one word "estate" were used without the associated word "property."

In this state the courts early recognized the distinction between the technical use of the word "claim" and its broader significance. (*Fallon* v. *Butler,* 21 Cal. 32; *Estate of Mc-Causland,* 52 Cal. 568-577.) In the opinion in the latter case, while recognizing the fact that "claim" as used in probate acts has reference to debts or demands against a decedent which might have been enforced during his lifetime, the court said: "This definition, which, in our opinion, is correct, will not include a claim for a family allowance." It will thus be seen that the word is used by the courts in both its technical and its usual sense, and that the latter is intended when claims against property are involved.

It makes no difference whether the agreement is to be considered as an attempted marriage settlement or not. By filing her claim against the estate based upon it appellant has

admitted its binding force as a contract between the parties. No question of the rights of creditors is here involved, and it makes no difference that there was no recordation of the instrument, even if it be labeled a "marriage settlement." Sections 178 et seq. of the Civil Code relate merely to the rights of creditors and of others who might have interest in real property involved in any such settlement. By section 180 of the Civil Code, the rule is announced that the recording or failure to record such a document has like effect as the recording or nonrecording of a grant of real property. Such a grant is of full force as between the parties, regardless of the question of recordation. (Devlin on Deeds, sec. 465.) There is no force therefore in appellant's contention that the agreement loses anything of its potentiality because it is an unrecorded marriage settlement.

The appellant insists that since the allowance provided by the contract was payable out of the assets of the estate, the testator must have contemplated a payment of a suitable sum to her by way of family allowance pending administration, because otherwise she might be left without means of support during that period. But the codicil directs *monthly payments* by the executors, not the equivalent of $250 per month to be paid on distribution. The executors were required to pay and they did pay these monthly sums which were correctly interpreted as claims against the estate. The very machinery of the contract and the codicil shows that it was the intention of the testator and of his wife that she should receive her stipulated monthly allowance; should have it paid to her monthly during his life and after his death, and that it should be in lieu of family allowance as well as of all other possible demands against his property whether in his lifetime or afterward.

It will be of little interest or value to analyze the authorities cited by learned counsel for petitioner and for respondents touching other contracts somewhat similar to this one which have been considered by this and other courts. Each agreement must be interpreted with reference to its own peculiar language read in the light of the surrounding circumstances. This contract we have attempted so to interpret.

The order from which the appeal of Alice M. Cutting is taken is affirmed.

Lorigan, J., and Henshaw, J., concurred.