[Civ. No. 19826. Second Dist., Div. One. Jan. 26, 1954.]

Estate of MAX S. HIRSH, Deceased. JEANETTE SARNO, Respondent, v. BESSIE HIRSH, Appellant.

Altagen & Rubin for Appellant.

Bachrack & Wilson and Ralph Wilson for Respondent.

DRAPEAU, J.—The petition for instructions of Bessie Hirsh and Jeanette Sarno, as coexecutrices of the last will of Max Hirsh, recites that Bessie Hirsh is the surviving spouse of decedent; that the estate consists of community property of decedent and Bessie Hirsh and also separate property of decedent. Under the terms of the will all of decedent's property was devised and bequeathed to his three children: Jeanette Sarno, Al Hardy and Hy Hirsh; and Bessie Hirsh is not entitled to receive, and does not claim any interest belonging to decedent, except her one-half of the community property.

It is further recited that Bessie Hirsh received $4,500 in family allowance during course of administration and that the estate is in a position to be closed. That a dispute exists between the coexecutrices as to which property of the estate shall be chargeable for payment of the family allowance.

It was contended by Bessie Hirsh, the surviving wife, that decedent's half of the community property and his separate property should *alone* be chargeable with family allowance.

Jeanette Sarno maintained that *all* of the community property and decedent's separate property were chargeable pro rata with family allowance.

The trial court found in accord with the latter contention and ordered that the separate property of decedent and all of the community property in the estate, including that of Bessie Hirsh, was chargeable pro rata with family allowance on a proportionate basis. Bessie Hirsh appeals.

Appellant urges that ''the family allowance is chargeable to the one-half interest of deceased's community property first and then to his separate property to the exclusion of the surviving wife's one-half interest in the community property.''

In this connection it is argued that ''in 1927, Civil Code, Section 161a, gave the wife a *'present, existing and equal interest'* in the community. It certainly must be assumed that the Legislature, when it enacted Probate Code, sections 202 and 300, in 1931, had in mind the nature of the wife's interest in the community, and consequently provided that *only the husband's property* was chargeable with a *family allowance*. This is the clear effect of the statutory provisions mentioned. (Emphasis added.)''

*Section 202,* Probate Code, reads: ''Community property passing from the control of the husband, either by reason of his death or by virtue of testamentary disposition of the wife, is subject to his debts and to administration and disposal under the provisions of Division III of this code; . . .''

*Section 300,* of the same code, provides: ''When a person dies, the title to his property, real and personal, passes to the person to whom it is devised or bequeathed by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as provided in Division II of this code; but all of his property shall be subject to the possession of the executor or administrator and to the control of the superior court for the purposes of administration, sale or other disposition under the provisions of Division III of this code, and shall be chargeable with the expenses of administration of his estate, and the payment of his debts and the allowance to the family, except as otherwise provided in this code.''

In support of her contention, appellant relies upon the *Estate of King,* 19 Cal.2d 354 [121 P.2d 716]. Respondent cites *Estate of Haselbud,* 26 Cal.App.2d 375 [79 P.2d 443] in support of her stand.

Neither case passes directly upon the point here at issue.

The King case holds that family allowance is properly charged against the assets of the estate, whether such assets are community or separate property, as against the contention that it must be paid from the community property.

The Haselbud case holds that expenses of family allowance and other debts should be borne ratably by the community and separate property of decedent, rather than that the separate property of decedent should first be resorted to.

In *Estate of Cutting,* 174 Cal. 104, 108 [161 P. 1137], it was said: ''Of course, a family allowance . . . is an expense of administration.''

With this in mind, we believe the language used by the Supreme Court in *Estate of Coffee,* 19 Cal.2d 248, 249 [120 P.2d 661], is applicable. In that case the court reversed an order fixing inheritance taxes which had the effect of allowing the widow of decedent to take one-half of their community property without deduction for debts, expenses of administration or inheritance taxes.

It was, there stated at page 252: ''For many years, the rule in this state has been that during the lifetime of a husband, the community property is liable for his debts. (*Grolemund* v. *Cafferata,* 17 Cal.2d 679 [111 P.2d 641];

*Spreckles* v. *Spreckles,* 116 Cal. 339 [48 P. 228, 58 Am.St. Rep. 170, 36 L.R.A. 497].) And section 202 of the Probate Code, said the United States District Court in a recent case 'subjects all community property passing from the control of the husband by his death or otherwise, to administration, to his debts, and to certain other charges. This is a provision more or less typical of the law in all community property states and should be construed as correlative to the principle that during the husband's life the community property is subject to his debts. Both are apparently corollaries to his right of management and control.' (*Sampson* v. *Welch,* 23 Fed.Supp. 271.)

"It is clear, therefore, that the portion of the community property which belongs to the wife is the one-half which remains after payment of the husband's debts and the expenses of administration apportioned between the community and separate property in accordance with the value thereof, and this is true even when the husband's share of the community, together with his separate property, is ample to pay those debts and expenses."

 In a specially concurring opinion filed in the same case, it was said at page 253: "In my opinion, the debts of the deceased, expenses and charges of administration, etc., should be first deducted from the gross value of the property subject to administration, *including all of the community and separate property.*" (Emphasis added.)

For the reasons stated, the order appealed from is affirmed.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 25, 1954.