[L. A. No. 16866.   In Bank.—March 13, 1940.]

In the Matter of the Estate of JAY B. LAMPMAN, Deceased.   MARION L. PITCHER, as Executrix, etc., Appellant, v. HELEN T. LAMPMAN, Respondent.

Frank C. Dunham and M. Everett Burton for Appellant.

Hahn & Hahn, E. F. Hahn, Jr., Allyn H. Barber, Clock, Waestman & Clock, Newlin & Ashburn and Richard K. Gandy, as *Amici Curiae*, on Behalf of Appellant.

Morin, Newell, Brown & Hamill and J. W. Morin for Respondent.

CURTIS, J.—This is an appeal from certain portions of the judgment approving the first and final account of the executrix of the last will and testament of Jay B. Lampman, deceased. The appeal is taken by the executrix of said will, particularly from that portion of said judgment which related to the statutory fees of said executrix and her attorney, and also from that portion of said judgment which reduced the fee paid to an accountant for services rendered the executrix both in the preparation of her first and final account and also the income tax return for three years.

The testator at the time of his death was the owner of an apartment house in Glendale, appraised at $42,500, and recently acquired in trade. It was subject to a trust deed which had never been signed by the decedent, and upon which an unpaid balance of $38,000 remained at the time of his death. The executrix took possession of the apartment, managing it through a paid manager, and collecting the rents and paying the operating expenses. The gross income from said property received by the executrix was set forth in said final account as totaling approximately $19,615. During the course of administration the property was sold for $47,500, which sale was confirmed by the probate court. The purchaser assumed the payment of the trust deed and paid to the executrix the difference between the purchase price and the amount due on the trust deed. The actual amount of cash paid to the executrix from this sale was $14,003, as the balance then due on the trust deed was the sum of $33,497.

The executrix presented her petition for distribution and her first and final account to the probate court and sought the approval of the court to the payment of $1507.09 to herself, as her commission as executrix of the will, and also an equal amount for her attorney, upon the theory that she had therein accounted for a total estate of $67,788.42. The executrix also sought in said final account "a substantial sum" to be fixed by the court to herself, and the sum of $500 to her attorney, for extraordinary services in connection with the management of the estate and sale of the apartment house. The final account of the executrix showed that there was not sufficient money remaining in her hands to pay the allowed claims in full, and that it would be necessary to prorate the payments of said claims. Respondent, who is the principal creditor, filed objections to the payment of the amount of statutory fees claimed by said executrix, and also to the payment by the estate of $75, paid by the executrix to an accountant for the preparation of federal and state income tax returns for the year 1936, and the payment of $150 to the same accountant for services rendered the executrix in connection with the preparation of said final account and the preparation of income tax returns for the years 1937 and 1938.

Upon the hearing of said account the court upheld the objections thereto, and made the following findings:

"A. The court finds that at the date of the death of the above named decedent, there was a Trust Deed of record on the real property belonging to the said estate upon which there was due approximately $35,000, and that said real property was sold by the said executrix, said sale having heretofore been approved and affirmed by the said court for the sum of $47,500, the said purchaser paying to the said executrix the sum of $14,003, and agreeing to assume and pay the holder of said Trust Deed the balance then due on the said Trust Deed, to-wit, the sum of $33,497.

"B. The court further finds that there has been no claim filed by the holders of said Trust Deed with the said Executrix and that because of the foregoing facts there should be first deducted from the total amount of the Estate accounted for by said executrix, to-wit, the sum of $67,799.42, the sum of $33,497, being the amount due on said encumbrance, as hereinbefore set forth, leaving net balance of said estate to

be accounted for by said executrix, in the sum of $34,302.42, upon which the statutory fee for the said executrix and her said attorney should be fixed, making the fee of said executrix and her said attorney in the sum of $1016.05 to each instead of the sum of $1507.99 to each, as set forth in said executrix's account.''

The court also allowed the executrix $300 and her attorney $500 additional fees for extraordinary services rendered the estate. The court also allowed the $75 paid to the accountant for assisting the executrix in the preparation of the federal and state income tax returns for 1936, but disallowed and reduced the sum of $150 to $60 which the court found to be "reasonable compensation . . . for services rendered in the preparation of federal and state income tax returns". In this regard, the court expressly found that the executrix had exceeded her authority in employing said accountant to assist her in the preparation of her final account.

The first question presented is whether the lower court was in error, in deducting the amount of the encumbrance due on the apartment house, which the purchaser agreed and assumed to pay, and thereafter fixing the statutory fee on the balance, to wit, $34,302.42, instead of $67,799.42.

Section 901 of the Probate Code establishes the right and fixes the measure of the commission of executors and administrators. Said section reads as follows: "The executor, when no compensation is provided by the will or he renounces all claim thereto, or the administrator, shall receive commissions upon the amount of estate accounted for by him, as follows: "For the first thousand dollars, at the rate of seven per cent; for the next nine thousand dollars, at the rate of four per cent; for the next ten thousand dollars, at the rate of three per cent; for the next thirty thousand dollars, at the rate of two per cent; and for all above fifty thousand dollars, at the rate of one per cent . . . " Section 910 of the Probate Code establishes the fees of attorneys upon the same basis as those of executors and administrators.

It is apparent that "the amount of the estate accounted for" is the base for reckoning commissions, and that once this figure is established the matter of determining the correct statutory fees is merely a matter of computation. (11B Cal. Jur., p. 461, sec. 1025; *Estate of Straus*, 144 Cal. 553, 556 [77 Pac. 1122].) The cases in this state which have

analyzed and discussed the meaning of the phrase, ''the amount of the estate accounted for'', in arriving at a solution of whether or not the correct base had been used in computing statutory fees of an executor or administrator are limited in number, and the fact that the cases in this jurisdiction relied upon by the appellant are practically identical with the cases relied upon by the respondent indicates that the opinions therein are susceptible of different and contrary interpretations.

Appellant, who claims to have ''accounted for'' the total sale value of the apartment house and furnishings, including the amount of the encumbrance thereon, insists that an executor is entitled to commissions upon the entire value of the property ''which he has taken into his possession''. She argues that because she had taken into her possession the physical property consisting of the apartment house and furnishings, she is entitled to commissions based upon the total sale price of said apartment house and furnishings. There can be no doubt that the executrix actually took possession of the apartment house and furnishings. Also there can be no doubt that the taking possession of property belonging to the decedent is one of the tests of whether or not an executor is entitled to the allowance or commissions based upon the inclusion of said property in his accounts. As early as 1866, in the *Estate of Isaacs,* 30 Cal. 105, 106, this court reversed a judgment which disallowed to the executors commissions upon the $5,000 set apart to the widow in lieu of a homestead, saying, ''The estate of the deceased, from which the five thousand dollars set apart to the widow in lieu of the homestead was derived, came to the possession of the executors, and they were made responsible for the whole estate, including the sum so set apart, and were entitled to their commissions thereon in their settlement.'' This rule has been consistently followed. (*Estate of Simmons,* 43 Cal. 543; *In re Ricaud,* 70 Cal. 69 [11 Pac. 471]; *Estate of Pease,* 149 Cal. 167 [85 Pac. 149]; *Estate of Boggs,* 33 Cal. App. (2d) 30 [90 Pac. (2d) 814].)

It should be noted, however, that the taking possession of property claimed as part of the estate of decedent is not the sole test, or the only essential factor to be taken into consideration in determining ''the amount of the estate accounted

for'' by the executor or administrator. An analysis of the decisions involving this particular question indicates that the crucial test is not so much the actual taking possession of the property, but the test is whether or not the executor or administrator is responsible for, or chargeable with, the property upon which commissions are sought. In fact, the very cases which hold that a method for determining whether or not an executor is entitled to commissions upon certain property is to determine whether or not such property has been taken into possession by the executor, base their conclusion upon the reasoning that an executor or administrator is responsible for and chargeable with the property which he has taken into his possession. Thus in *Estate of Isaacs, supra,* the court allowed the commission to the executors upon the ground that the $5,000 given the widow in lieu of a homestead had come into the possession of the executors, ''and they were made responsible'' for the whole estate, including the sum so set apart, and in *Estate of Ricaud, supra,* where property had been included in the inventory, possession of which had been taken by the executors, but which during the course of administration had been turned over in compliance with a judgment secured against said executors in an action for possession of the property originally instituted against the decedent, the court refused to allow commissions computed upon the value of said real property, holding the executors were not entitled to such commissions for the reason that the value of the land ''did not form any part of the value of the estate in the possession of the executors *for which they were chargeable''*. In *In re Delaney,* 110 Cal. 563 [42 Pac. 981], the court held the reasoning in the Ricaud case, *supra,* was applicable to that case, and refused to allow commissions upon property taken into possession by an executor, but lost in a lawsuit during the course of administration. It is also undoubtedly the basis of the reasoning in the subsequent decisions in this state. (*Estate of Simmons, supra; Estate of Fernandez,* 119 Cal. 579 [51 Pac. 851]; *Estate of Carver,* 123 Cal. 102 [55 Pac. 770]; *Estate of Pease,* 149 Cal. 167, 169 [85 Pac. 149]; *Estate of O'Connor,* 200 Cal. 646 [254 Pac. 269]; *Estate of Fritz,* 140 Cal. App. 487 [35 Pac. (2d) 643]; *Estate of Boggs, supra.*) In other words, the principle which underlies all of these cases dealing with the

question of the "amount of the estate accounted for" by an executor or administrator, is the premise that the measure of the executor's responsibility is the measure of his compensation.

It was in accordance with this principle that the court in *Estate of Carver,* 123 Cal. 102 [55 Pac. 770], allowed commissions to the administratrix based upon the total value of the estate of the decedent rather than deducting therefrom the value of the land which had been turned over to the mortgagee upon a compromise of a foreclosure suit. The debt existing therein was the debt of the decedent for which he and his estate were liable, and the turning over of the property to the mortgagee in settlement of the debt was not a mere bookkeeping transaction, but an "accounting for" that portion of the estate. Likewise, in *Estate of Pease, supra,* the debt was a debt of the decedent, and a claim therefor had been presented to the estate. The court in allowing to the executor a commission based upon the total sale price of the property held that the payment of the mortgage was done by the real estate broker as an agent of the executor, and based its holdings upon the fact that "the executor is bound to account to the court for the entire proceeds of sales made under its orders".

The trial court in the instant case placed its reason for deducting the encumbrance from the total sale price of the apartment prior to computing the statutory fees, squarely upon the fact that the indebtedness of the trust deed was not that of the decedent and no claim had been presented against the estate. In other words, the executrix was not responsible for, or chargeable with, the entire purchase price but only the excess of the total sale price over the encumbrance. The court in *Estate of Pease, supra,* makes this same distinction for it says: "The general rule appears to be that where property subject to an encumbrance is sold, the executor is entitled only to commissions on the net purchase price in excess of the encumbrances. (2 Woerner on American Law of Administration, 2d ed., p. 1166; *Buerhaus* v. *De Saussure,* 41 S. C. 457 [19 S. E. 926, 20 S. E. 64]; *Baucus* v. *Stover,* 24 Hun, 109; cf. *Hitchcock* v. *Mosher,* 106 Mo. 578 [17 S. W. 638].) An examination of these cases indicates that what

was sold was merely the equity of redemption, and it may well be held that where property is sold subject to an encumbrance which still remains, the commissions should be calculated only on the value of the property sold. Here, however, the mortgage had been presented as a valid claim against the estate."

In *Estate of Boggs, supra,* the court held that the executrix was only chargeable in her account with that portion of the estate of decedent which had actually come into her possession, and was not entitled to commissions based upon the property which had not come into her possession but which was held by a bank as security for an indebtedness which was larger than the actual value of the property held as security. It is apparent that since the facts in that case are different from those in the instant case in that the property there involved was not taken into the possession of the executrix, the decision therein is not particularly helpful in the instant case.

We are satisfied that the determinative factor in the instant case is whether or not the executrix herein was chargeable with, or responsible for, the total value of the apartment house and furnishings, as evidenced by the sale price of $47,500, or only for the actual sum received by her, that is to say, $14,003. We think there is no doubt that she was only chargeable with the $14,003 and that, therefore, the probate court did not err in refusing to allow her commissions based upon the total sale price of the property.

In this connection it may be noted that both the executrix and the attorney herein received additional fees for extraordinary services in connection with the management and sale of the apartment house and the administration of the estate. This power of the court to grant additional fees for extraordinary services is one which may be used to equalize any injustice which may result when the estate upon which the commissions are allowed is small, and the services involved are extra onerous.

Appellant's second contention that the court erred in reducing the fee allowed the accountant for services to her in preparing her final account cannot be sustained in the absence of a showing of an abuse of discretion. The matter of payment to third persons for services rendered an execu-

tor rests in the sound discretion of the court. (*Estate of Boggs, supra.*)

The judgment is affirmed.

Houser, J., Shenk, J., Carter, J., Edmonds, J., Gibson, J., and Waste, C. J., concurred.