[Civ. No. 4652. Fourth Dist. Feb. 26, 1954.]

Estate of RUFUS A. PHILLIPS, Deceased. LUCILE H. PHILLIPS et al., Appellants, v. DALE HIESTAND, as Executor, etc., Respondent.

Robert H. Fouke, David E. Peckinpah, Harold M. Child and Robert S. Thaman for Appellants.

James J. Baker for Respondent.

BARNARD, P. J.—This is an appeal, on an agreed statement, from an order fixing ordinary executor's commission and attorneys' fee in an estate.

Rufus A. Phillips died testate on October 1, 1949. During the course of administration, and in connection with a proceeding to determine heirship, the court made an order on May 28, 1951, in which, after finding that all of the property described in the inventory was the community property of the deceased and his widow, and that she had waived any right to take under the will and had elected to take her one-half of the community property, it was ordered that the executor "pay out of said estate" all debts and claims "and all expenses of administration," and that there be distributed to the widow "one-half of all of said estate after the payment of the amounts specified."

Subsequently, the executor filed his first account and a petition for partial distribution requesting, among other things, the fixing of statutory fees for himself and for his attorneys. Objections were filed and after a hearing an order was made on January 7, 1953, settling the account, decreeing partial distribution, and allowing statutory fees based on the value of the entire community property. This appeal is from the portion of that order fixing and allowing ordinary commissions and fees to the executor and his attorneys.

All of the property involved stood in the name of the husband, and was the post-1927 community property of the decedent and his surviving widow. The sole question presented is whether, under such circumstances and where the husband's will attempted to exercise the right of testamentary disposition over all of said property, the statutory commissions and fees are to be computed "upon the estate of the decedent accounted for by the executors and subject by law to testamentary disposition of the decedent by will, alone, or are such statutory fees to be computed upon the estate of the decedent accounted for by the executor, including the one-half of the community property which belongs to the surviving widow." The appellants contend that under sections 901 and 910 of the Probate Code an executor and his attorney are entitled to statutory fees upon the amount of "estate"

accounted for; that under section 13303 of the Revenue and Taxation Code "estate" means the property or interest of the decedent; that the surviving wife's half of the community property is not a part of the estate of her deceased husband, although it is "subject to the payment of one-half of the debts, charges and expenses of administration incurred in connection with the probate of the husband's estate"; and that the term "estate," as used in sections 901 and 910 of the Probate Code, means the estate of the decedent only, excluding the wife's half of the community property.

The appellants rely on *Estate of Lampman,* 15 Cal.2d 212 [100 P.2d 488], and on certain cases involving various forms of state and federal inheritance and estate taxes. In *Estate of Lampman,* it was held that the executrix was not responsible for, or chargeable with, the portion of the selling price of certain property which was represented by a trust deed, and for which no claim had been or could be filed in the estate. While the tax cases, involving liability under various tax laws as they existed at different times, are not controlling here, some of the observations there made are suggestive with respect to the present problem. In *Estate of Coffee,* 19 Cal. 2d 248 [120 P.2d 661], after discussing various amendments to the statutes and the liability of the community property for debts, the court said: "It is clear, therefore, that the portion of the community property which belongs to the wife is the one-half which remains after the payment of the husband's debts and the expenses of administration . . ." (In *Estate of Hirsh,* 122 Cal.App.2d 822 [265 P.2d 920], the court, in accordance with the Coffee case, affirmed an order charging all of the community property with the family allowance.) In *Estate of Atwell,* 85 Cal.App.2d 454 [193 P.2d 519], after reviewing the history of the statutes now found in sections 201 and 202 of the Probate Code, the court said: "The alterations in the statutes throughout their history have not varied the imposition upon the entire community property of the debts of the husband, expenses of administration, and lawful charges against the estate," and also "One-half of the entire community property belongs and goes to the widow upon condition, the condition being that the property lawfully diverted during the course of administration, i.e., necessary for the payment of debts, expenses of administration, federal estate tax, etc., shall be used for such purposes and shall not go to the widow. The property so lawfully diverted therefor never passes to the widow."

In *Estate of Cushing,* 113 Cal.App.2d 319 [248 P.2d 482], while it was held that a recent change in the federal law affecting the federal estate tax had changed the law as applied in the Atwell case, in certain respects, it was pointed out, in accordance with the ruling in the Coffee case, that ''The debts of the husband and the ordinary costs of administration are chargeable against the entire community property,'' and the court further said: ''Thus, the federal estate tax, unlike the ordinary cost of administration, is not made a charge against the wife's share of the community property.''

While section 201 of the Probate Code provides that on the death of the husband one-half of the community property ''belongs'' to the surviving widow, section 202 provides that the community property passing by reason of the husband's death ''is subject to his debts and to administration and disposal under the provisions of Division III of this code.'' In division III, section 300 provides that when a person dies the title to his property passes, among other things, to the persons who succeed to his estate as provided in division II, but that ''all of his property shall be subject to the possession of the executor . . . and to the control of the superior court for the purposes of administration, sale or other disposition under the provisions of division III of this code, and shall be chargeable with the expenses of administering his estate,'' and the payment of his debts and any family allowance. Sections 901 and 910 provide for the payment of executor's commissions and attorneys' fees ''upon the amount of estate accounted for'' by the executor. Section 1001 provides, in the case of partial distribution, for the delivery by the executor to the person entitled thereto, upon the court's order, of such share of the estate as the court may designate. Section 1021 provides, upon final distribution, for delivery by the executor to the proper persons of the part to which each is entitled, as ordered by the court.

The wife's one-half of the community property is by the statutes made subject to administration and, impliedly at least, to the costs of administration. Being subject to administration, and necessarily to be handled and accounted for by the executor of the husband's estate it should naturally be considered a part of the estate being administered insofar as fixing and paying all costs of administration is concerned. In *Estate of Lampman, supra,* it was held that while possession of the property was one element to be considered the true test, in determining whether the value of certain prop-

erty should be considered in fixing fees, is whether or not the executor "was chargeable with, or responsible for," the portion of the property in question.

While one-half of the community property "belongs" to the widow the statutes make it subject to administration, and to proper "disposal" as ordered by the court in that administration. When a husband dies, the probate court has jurisdiction to pass upon the wife's claim to a community interest (*Estate of Kurt*, 83 Cal.App.2d 681 [189 P.2d 528]) and must determine what part of the property is community property, what part is needed to pay debts, what election has been made by the widow, and other questions, before it can be known what "belongs" to the widow. When these matters are determined, and the wife's share can be identified, it must then be separated from the rest of the estate in some orderly manner by an order or decree made by the court. In the meantime the executor must remain in possession, and it cannot reasonably be said that he is not chargeable with, and responsible for, all the property thus placed in his keeping. The wife's community interest is necessarily involved in a large part, if not all, of such administration, and should logically be considered a part of that estate for the purpose of fixing and paying the proper cost of administration. The executor remains responsible for and chargeable with all of the property, until released by the court through some order making a proper "disposal" of the remaining portion which "belongs" to the widow. We conclude that the wife's share of the community property is a part of the "estate" which came into the hands of this executor within the meaning of that term as used in sections 901 and 910, is property which the executor is responsible for and is chargeable with, and was properly included in the amount used as a basis for fixing the ordinary commissions and fees.

A further consideration in this case may appear in the fact that by an earlier order made on May 28, 1951, the court ordered all expenses of administration paid out of the estate and one-half of the remainder "after the payment of the amount specified" paid and distributed to the widow, and this order was never appealed from.

The portion of the order appealed from is affirmed.

Griffin, J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 21, 1954.