[Civ. No. 22822.   Second Dist., Div. Two.   Mar. 26, 1958.]

Estate of ALVIN C. ALGEE, Deceased.   MADELINE J. ALGEE, as Executrix, etc., Appellant, v. W. W. ESCHWIG, Respondent.

Butler & Hegner for Appellant.

W. W. Eschwig, in pro. per., for Respondent.

ASHBURN, J.—Madeline Algee, widow and executrix of the will of decedent, appeals from an order allowing respondent Eschwig $3,000 as his share of the statutory attorney's fee, another attorney having been substituted as counsel for the executrix in his place. Respondent served in that capacity from December 10, 1956 to May 24, 1957, when the substitution was made. He thereupon applied for an allowance upon attorney's fees, same was contested, and the court awarded him $3,000 as his share of the statutory compensation, together with the sum of $263.16 in repayment of moneys advanced by him. The estate had not then progressed to the stage of an accounting. The full fee for ordinary services computed upon the basis of the appraised value of $163,489.49 would have been $3,832.34. Appellant does not argue that this allowance was excessive *per se*, but relies upon two basic propositions, (1) that no allowance upon statutory fees may be made before final accounting, and (2) as all the property was community, one-half of which belonged to the surviving widow, that half did not constitute part of the husband's estate and could not be included in the base for fee computation.

In support of the first proposition appellant cites *Estate of Hite*, 155 Cal. 448, 458 [101 P. 448], which does hold that no allowance upon statutory fees can be made in advance of final accounting. The opinion says, at page 458: "We do not think that it was intended by section 1616 of the Code of Civil Procedure to require a court to make any allowance on account of such commissions in advance of a final account by the executor or administrator. . . . It is settled that an executor or administrator is not entitled to the commissions allowed him by law until the settlement of his final account. (See *Estate of Rose*, 80 Cal. 166, 180 [22 P. 86]; *Estate of Carter*, 132 Cal. 114 [64 P. 123, 484].) We think the same rule must be held applicable to attorneys under the

commission method of compensation provided for by section 1619, so far as the ordinary probate proceedings are concerned, and that nothing is due from the estate on account thereof until such services are completed." This ruling was made on March 31, 1909. At that time section 1616, Code of Civil Procedure, provided: ". . . Any attorney who has rendered services to an executor or administrator may at any time during the administration . . . apply to the court for an allowance to himself of compensation therefor, and the court shall on the hearing of such application make an order requiring the executor or administrator to pay to such attorney out of the estate such compensation as to the court shall seem proper. Any payment made by an executor or administrator in conformity with such order shall be allowed by the court in his account." (Stats. 1905, ch. 577, p. 776.) The 1911 Legislature amended the section (Stats. 1911, ch. 390, p. 708) with presumptive intent to change the law. (*People v. Weitzel*, 201 Cal. 116, 118 [255 P. 792, 52 A.L.R. 811]; *Clements v. T. R. Bechtel Co.*, 43 Cal.2d 227, 231 [273 P.2d 5].) The provision for an application at any time during administration was retained, but the phrase "such compensation as to the court shall seem proper" was changed to read "such compensation on account of services rendered by such attorney up to the date of such order"; and this significant phrase was added, "and such payment shall be forthwith made."[1] In 1929 the section was again amended (Stats. 1929, ch. 492, p. 853) to provide that the application could be made at any time after six months from admission of the will to probate or the granting of letters of administration; the provision that "such payment shall be forthwith made" remained in the section.[2] In the process of codification as section 911,

[1]Stats. 1911, ch. 390, p. 708: ". . . Any attorney who has rendered services to an executor or administrator may at any time during the administration, and upon such notice to the other parties interested in the estate as the court shall by order require, apply to the court for an allowance to himself of compensation therefor, and the court shall on the hearing of such application make an order requiring the executor or administrator to pay to such attorney out of the estate such compensation on account of services rendered by such attorney up to the date of such order as to the court shall seem proper, and such payment shall be forthwith made. . . ."

[2]Stats. 1929, ch. 492, p. 853: ". . . Any attorney who has rendered services to an executor or administrator may at any time after six months from the admission of a will to probate, or the granting of letters of administration, and upon such notice to the other parties interested in the estate as the court shall by order require, apply to the court for

Probate Code, the language was slightly changed but no substantial alteration made in the wording or meaning of the section. It then and now reads: ''Any attorney who has rendered services to an executor or administrator, at any time 'after six months 'from the issuance of letters testamentary or of administration, and upon such notice to the executor or administrator and to the persons interested in the estate as the court or judge thereof shall require, may apply to the court for an allowance upon his fees; and on the hearing the court shall make an order requiring the executor or administrator to pay such attorney out of the estate such compensation, on account of services rendered up to that time, as the court shall deem proper, and such payment shall be made forthwith.''

As the Hite case, *supra*, analogized the attorney's fee to the executor's fee in this respect it is significant that the 1911 amendment to section 1616, Code of Civil Procedure (Stats. 1911, ch. 390, p. 708) also conferred upon the personal representative the right to apply for an allowance ''upon his commissions'' at any time after one year from probate of will or issuance of letters of administration, and authorized the court to allow him ''such portion of his commissions as to the court shall seem proper''; it then added this counterpart to the provision for immediate payment to the attorney of the amount awarded him, ''and the portion so allowed may be thereupon charged against the estate,''[3] which means that the representative may immediately pay himself the amount so allowed. Section 904, Probate Code, is in substantially this same form today.

The conclusion seems inescapable that the Legislature, over the years following the Hite decision, has deliberately reversed

an allowance to himself of compensation therefor, and the court shall on the hearing of such application make an order requiring the executor or administrator to pay such attorney out of the estate such compensation on account of services rendered by such attorney up to the date of such order as to the court shall seem proper, and such payment shall be forthwith made.''

[3]Stats. 1911, ch. 390, p. 708: ''At any time after one year from the admission of a will to probate, or the granting of letters of administration, any executor, or administrator, may, upon such notice to the other parties interested in the estate as the court shall by order require, apply to the court for an allowance to himself upon his commissions, and the court shall on the hearing of such application make an order allowing such executor or administrator such portion of his commissions as to the court shall seem proper, and the portion so allowed may be thereupon charged against the estate.''

the policy there declared concerning allowances upon statutory fees of personal representatives and their attorneys.

In *Estate of Jones,* 166 Cal. 147, 152 [135 P. 293] (decided in 1913), the court was dealing with an allowance on account of an executor's commissions and said, without reference to the Hite decision: "The allowance of commissions to the executor is objected to on the ground that the court is not authorized to apportion commissions between successive personal representatives until the estate has been completely administered and is ready for distribution. Such was unquestionably the law prior to the amendment in 1911 of section 1616 of the Code of Civil Procedure [Stats. 1911, p. 707]. (*Estate of Barton,* 55 Cal. 87; *In re Levinson,* 108 Cal. 456 [41 P. 483, 42 P. 479].) But under the amendment referred to, the executor or administrator may, at any time after one year from the admission of the will to probate, or the granting of letters of administration, 'apply to the court for an allowance to himself upon his commissions,' and the court is empowered to make an order 'allowing such executor or administrator such portion of his commissions as to the court shall seem proper, and the portion so allowed may be thereupon charged against the estate.' This provision plainly contemplates an allowance on account of commissions before the administration is completed, and to this extent changes the law as declared in the cases above cited. There is nothing to indicate that the rule is not applicable to an executor who dies or is removed, as well as to one continuing in office."

*Estate of Piercy* (1914), 168 Cal. 750 [145 P. 88], was an appeal from an order settling an administrator's third account current. The court had refused to allow any counsel fees or commissions in a situation essentially the same as the one before us,—need for an apportionment between administrators, one of whom had retired from the proceeding. At pages 754-755, the court said: "The appellant complains of the refusal of the court to allow him administrator's commissions and counsel fees. The appellant had been succeeded as administrator by Andrew J. Piercy and the administration of the estate remained uncompleted. The former administrator was not, therefore, entitled to the statutory commissions, but, at most, to such part thereof as the court might apportion to him upon a consideration of the respective rights of the successive administrators. Prior to the amendment in 1911, of section 1616 of the Code of Civil Procedure, no such apportion-

ment could be made until the estate had been completely administered and was ready for distribution. (*Estate of Barton,* 55 Cal. 87; *In re Levinson,* 108 Cal. 456 [41 P. 483, 42 P. 479].) The amended section provides, however, for an application, after the expiration of one year from the grant of letters, for an allowance upon commissions. This provision is applicable to successive administrators. (*Estate of Jones,* 166 Cal. 147 [135 P. 293].) . . . This conclusion is no bar to the right of the appellant to proceed hereafter for a partial allowance under section 1616. . . . The demand for an allowance for attorney's fees stands upon similar grounds.'' To the same effect is *Estate of Mallory,* 99 Cal.App. 96, 106 [278 P. 488].

Concerning an allowance to the attorney made under section 911, Probate Code, *Zagoren* v. *Hall,* 122 Cal.App. 460, 465 [10 P.2d 202], says: ''The final provisions of section 911 of the Probate Code that 'such payment (for attorney's fees) shall be made forthwith,' should be construed to mean that prompt payment shall be made when there are available funds in the estate from which the obligation may be satisfied. When an estate possesses available funds with which to pay attorney's fees which have been allowed, and the administrator or executor fails or refuses to comply with the order, adequate remedy exists either by citation or by resorting to the provisions of section 954 of the Probate Code.'' To the same effect, see *Estate of McDonald,* 37 Cal.App.2d 521, 525 [99 P.2d 1115].

We entertain no doubt that the making of the allowance to respondent as his share of the attorney's fees ultimately payable from this estate was a proper exercise of discretion on the part of the trial judge.

The contention that the wife's share of community property cannot be considered in computing fees proves to be equally untenable. The argument is that half of the community property is vested in the wife during the lifetime of both spouses, becomes her separate property immediately upon the husband's death, is not taken into the possession of the personal representative nor chargeable to him in his accounts, does not pass to the widow by decree of distribution, and hence does not and cannot constitute a part of a deceased husband's estate; being no part of that estate it cannot be included within the base for computation of fees. Appellant concedes that the contrary is ruled in *Estate of Phillips,* 123 Cal.App.2d 570 [266 P.2d 954] (4th Dist.; hearing denied), and would have

the reasoning of that case reexamined. The conclusion there expressed is this: ''We conclude that the wife's share of the community property is a part of the 'estate' which came into the hands of this executor within the meaning of that term as used in sections 901 and 910, is property which the executor is responsible for and is chargeable with, and was properly included in the amount used as a basis for fixing the ordinary commissions and fees.'' (P. 574.) We find that opinion persuasive and in our opinion sound in result.

Appellant's argument in this regard reflects a series of misapprehensions. There are few absolutes in the law and the postulate that the wife is the present owner of one-half of the community property is not one of them. Section 161a, Civil Code, which declares the existence of that present interest, is qualified by section 202, Probate Code: ''Community property passing from the control of the husband, either by reason of his death or by virtue of testamentary disposition by the wife, is subject to his debts and to administration and disposal under the provisions of Division III of this code. . . .'' Mr. Justice Vallée thus aptly phrases the matter in *Estate of Atwell,* 85 Cal.App.2d 454, 464 [193 P.2d 519]: ''One-half of the entire community property belongs and goes to the widow upon condition, the condition being that the property lawfully diverted during the course of administration, i.e., necessary for the payment of debts, expenses of administration, the federal estate tax, etc., shall be used for such purposes and shall not go to the widow. The property so lawfully diverted therefor never passes to the widow.'' The Supreme Court defined the wife's right as follows in *Estate of Coffee,* 19 Cal.2d 248, 252 [120 P.2d 661]: ''It is clear, therefore, that the portion of the community property which belongs to the wife is the one-half which remains after the payment of the husband's debts and the expenses of administration apportioned between the community and separate property in accordance with the value thereof, and this is true even when the husband's share of the community, together with his separate property, is ample to pay those debts and expenses.''

██ The personal representative of the husband is entitled to possession of the entire community property and is chargeable with same upon his accounting. (*Chase* v. *Leiter,* 96 Cal. App.2d 439, 457 [215 P.2d 756]; *Estate of Phillips, supra,* 123 Cal.App.2d 570, 574; 20 Cal.Jur.2d § 259, p. 417.) In the

Chase case, *supra,* the court said: "The action of the trial court in awarding the widow possession of any of the community property as against the executors was erroneous. All of the community property is subject to administration in the estate of the husband." (P. 457.) In Phillips, *supra:* "When a husband dies, the probate court has jurisdiction to pass upon the wife's claim to a community interest (*Estate of Kurt,* 83 Cal.App.2d 681 [189 P.2d 528]) and must determine what part of the property is community property, what part is needed to pay debts, what election has been made by the widow, and other questions, before it can be known what 'belongs' to the widow. When these matters are determined, and the wife's share can be identified, it must then be separated from the rest of the estate in some orderly manner by an order or decree made by the court. In the meantime the executor must remain in possession, and it cannot reasonably be said that he is not chargeable with, and responsible for, all the property thus placed in his keeping. The wife's community interest is necessarily involved in a large part, if not all, of such administration, and should logically be considered a part of that estate for the purpose of fixing and paying the proper cost of administration. The executor remains responsible for and chargeable with all of the property, until released by the court through some order making a proper 'disposal' of the remaining portion which 'belongs' to the widow." (P. 574.)

██ Upon death of the husband, the determination of what constitutes community property and the apportionment of the wife's share to her is a matter resting exclusively with the probate court (*Estate of Kurt,* 83 Cal.App.2d 681, 684 [189 P.2d 528]; *Central Bank* v. *Superior Court,* 45 Cal.2d 10, 17 [285 P.2d 906]; *Estate of Nash,* 132 Cal.App.2d 233, 237 [282 P.2d 184]; *Estate of Hartnett,* 155 Cal.App.2d 280, 282 [318 P.2d 81]), and a decree of distribution is necessary to that end. (*Estate of Nash, supra,* p. 237; *Colden* v. *Costello,* 50 Cal.App.2d 363, 370 [122 P.2d 959].) In Colden, *supra,* it is said: "The title of a surviving wife to her interest in the community estate rests upon a decree of distribution. Her right as survivor of the community is one thing; the decree of distribution which determines and identifies the estate which comes to her by virtue of her right is quite another, and is indispensable as a muniment of her title." (P. 370.)

The analogy of a mortgaged property, upon which appel-

lant relies (*Estate of Lampman,* 15 Cal.2d 212 [100 P.2d 488]), is not a true one, nor is it helpful. This is pointed out in Phillips, *supra,* at page 573: ''The wife's one-half of the community property is by the statutes made subject to administration and, impliedly at least, to the costs of administration. Being subject to administration, and necessarily to be handled and accounted for by the executor of the husband's estate it should naturally be considered a part of the estate being administered insofar as fixing and paying all costs of administration is concerned. In *Estate of Lampman, supra,* it was held that while possession of the property was one element to be considered the true test, in determining whether the value of certain property should be considered in fixing fees, is whether or not the executor 'was chargeable with, or responsible for,' the portion of the property in question.''

Cases which hold that estate and inheritance taxes do not attach to the wife's share of the community property are likewise not controlling. (See Phillips, *supra,* at p. 572.) Though her half may not be literally a part of the deceased husband's estate, it is made so by section 202, Probate Code, and the burdens thereby placed upon it.

As above indicated, we consider that the Phillips case is soundly reasoned, buttressed by ample precedents, and sound in its conclusion that the wife's half of the community property is chargeable with a proportionate part of the costs of administration of the deceased husband's estate and that attorney's fees are a part of such costs. In addition to the authorities above cited we refer to *Estate of Marinos,* 39 Cal.App.2d 1, 7 [102 P.2d 443], which makes the same holding as Phillips.

Order affirmed.

Fox, P. J., and Herndon, J., concurred.