EDWIN M. PETERSEN, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 73870, 73871, 75864. Filed March 22, 1961.

---

[1] Proceedings of the following petitioners are consolidated herewith: Estate of Flora M. Petersen, Deceased, Edwin M. Petersen, Executor, and Edwin M. Petersen, Docket No. 73871; and Edwin M. Petersen, Docket No. 75864.

*Samuel Taylor, Esq.,* and *Robert M. Winokur, Esq.,* for the petitioners.

*Joseph D. Holmes, Jr., Esq.,* and *Aaron S. Resnik, Esq.,* for the respondent.

FORRESTER, *Judge:* Respondent has determined the following deficiencies in income tax:

| Docket No. | Petitioner | Year | Amount |
|---|---|---|---|
| 73871 | Estate of Flora M. Petersen, Deceased, Edwin M. Petersen, Executor, and Edwin M. Petersen | 1953 | $1,425.62 |
| 73870 | Edwin M. Petersen | 1954 | 4,875.56 |
| 75864 | Edwin M. Petersen | 1955 | 13,233.84 |
| | Edwin M. Petersen | 1956 | 6,972.33 |

The issues now remaining for our determination are whether certain assets were properly included in the decedent's estate, and if the income from these assets was properly reportable by the estate or the surviving husband.

FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

Petitioner Edwin M. Petersen (hereinafter called Petersen or petitioner) is the surviving spouse of Flora M. Petersen (hereinafter called Flora) who died on August 13, 1953. Petersen duly qualified as executor of her estate in the Superior Court of the State of California in and for the County of Santa Cruz on September 11, 1953, and at all times thereafter material has been its duly qualified and sole executor. The Petersens have, at all times herein relevant, resided in Santa Cruz County. Petitioner filed a joint income tax return with Flora for 1953 and individual returns for the years 1954 through 1956, all with the district director of internal revenue in San Francisco, California.

Flora's will, bequeathing her entire estate to her husband, was duly admitted to probate on September 11, 1953. Petersen, as executor, caused the required notice to creditors to be published starting on September 15, 1953, and within 4 months after notice was first given, claims in the aggregate amount of $29,390.91 were presented, and all but one were duly paid by the executor. The disallowed claim was made by Clarence W. Ramsay for damages in the amount of $26,000, allegedly caused by the negligent use of insecticides on property adjacent to that of Ramsay, owned of record by Flora and her son, Allan E. Petersen, and known as the Rogers Ranch. Shortly after the disallowance of his claim, and in March 1954, Ramsay brought a civil action in the Superior Court in Santa Cruz County for the identical amount as his claim, naming as de-

fendants Petersen, both individually and as executor, Allan E. Petersen, and unnamed persons. The action was dismissed as to Petersen in his individual capacity in 1955. On or about April 18, 1957, the claim was settled for the sum of $5,500, a release being executed in favor of the remaining named defendants, and a satisfaction of claim against the estate being filed on the same day.

In June 1954, Petersen, as executor, caused an inventory and appraisement of the assets of the estate to be filed. The assets listed included the following:

| Item | Appraised value |
|---|---|
| Separate property: | |
| Partnership interest in Petersen Cattle Company, a copartnership composed of decedent and E. M. Petersen, decedent's interest one-half | $171,753.55 |
| Indebtedness of Walter Schilling Company to decedent in the sum of $11,983.38 | 11,983.38 |
| Real property (one-half interest in the Rogers Ranch) | 12,500.00 |
| Total separate property | 210,140.43 |
| Joint tenancy property (with E. M. Petersen): | |
| Real estate | [1]170,636.00 |
| Total joint tenancy property | [1]203,021.84 |

[1] Full appraised value, including the interest of the surviving joint tenant.

Record title to the joint tenancy real property was held in the names of Edwin M. Petersen and Flora M. Petersen as joint tenants at the time of her death, but dates of incidence of said joint tenancies are not shown in this record.

On September 25, 1953, Petersen, acting as executor, filed a preliminary estate tax notice, and on September 14, 1954, filed a Federal estate tax return for the estate. Respondent proposed certain adjustments increasing the tax due, and an additional assessment in the net amount of $10,495.78, increasing the tax to about $45,000, was agreed to by the executor in April 1957. The additional sum, together with the reported tax liability, was paid prior to July 1957. In October 1958, the executor filed a claim for refund of the additional payment, which claim was denied in September 1959.

No timely claims to specific assets or against Flora's will were filed.

In July 1957, Petersen, as executor, filed his report and petition for final accounting, pursuant to which a decree ordering final distribution of the estate was entered on July 26, 1957, by the Superior Court.

Petitioner and Flora were married in 1910. In 1931 they signed an instrument by which they did "certify and declare" that all property then owned or held, and all property to be held in the future "is the community property of the * * * parties hereto." There is no provision in California law for recording such a document and it was not recorded.

For many years prior to 1938 Petersen had been in the cattle-feeding, ranching, and wholesale butcher business. During 1937, the business was known as Petersen's Wholesale Butchers. That year Petersen, in his income tax returns, allocated one-fourth of the income from this business to Flora, and she reported it as such in her separate return. In 1939 Petersen filed a timely gift tax return in which he recited the gift to Flora on January 1, 1938, of a one-quarter interest in the wholesale butcher business located in Watsonville, California, and Flora filed an information return to the same effect.

On January 9, 1938, Flora and Petersen signed articles of copartnership, forming a firm to be known as Petersen's to carry on the meat business. Each partner had an equal one-half interest. Article 7 provided that:

All property of every kind and character carried on the books of the partnership, or of the business as heretofore carried on by said E. M. Petersen, shall be considered as partnership property and first party [Petersen] does hereby give and grant to second party [Flora] such interest in said business and the assets thereof as will vest in second party an equal one-half interest in said partnership and the assets thereof.

In their separate income tax returns for 1938, Flora and Petersen each reported one-half the income from the partnership. This partnership continued in existence through August 13, 1953, both partners being active in the business.

Immediately after the death of Flora in August 1953, Petersen, his son Allan, who had been assisting in the operation of the business, and their accountants met to discuss the future of the business. It was decided to continue the business until the administration of the estate had been concluded, and ledger accounts were set up for the estate and for Petersen, each receiving one-half of the income. Prior to Flora's death there had been only one joint capital account. Estate and individual income tax returns filed for the period in question show one-half of the income from the business reported by the estate and the other half by Petersen. No written partnership agreement between Petersen and the estate existed, and Flora's will did not expressly authorize her executor to continue the partnership or to enter into a new one.

On May 2, 1957, Petersen individually caused a petition for termination of joint tenancy to be filed in the Superior Court. The property involved was the same real estate listed as joint tenancy property in the 1954 inventory and appraisement. Contained in the petition were sworn allegations that neither joint tenant had ever conveyed the joint tenancy property or any part thereof, that at Flora's death the property was still held in joint tenancy, and that her death had terminated the joint tenancy. A decree pursuant to this petition was entered on June 7, 1957, stating that by reason of Flora's death, title in fee to the property involved was vested in Petersen.

Partnership income tax returns for the Petersen Cattle Company [2] for the years 1953 through 1957 were duly filed, and the estate filed fiduciary income tax returns for the calendar years 1954 through 1956 and for the periods August 14 to December 31, 1953, and January 1 to July 26, 1957. All of these returns apportioned one-half of the income from the business to Petersen and one-half to the estate, and all treated the business as being a partnership consisting of Petersen and the estate as equal partners. The Commissioner determined that all of the income from the business was taxable to petitioner for the years here in issue.

Probate of Flora's interest in the partnership assets was necessary. The period in which a reasonably prudent executor of the estate could have performed the ordinary duties of administration did not terminate until July 26, 1957.

OPINION.

Petitioner contends that the income earned by the assets of the Petersen Cattle Company during the period beginning with the death of Flora on August 13, 1953, and continuing through all of the years here involved was properly divided equally between Petersen and Flora's estate, and that the latter properly reported its half pursuant to section 161(a)(3) of the Internal Revenue Code of 1939 and its 1954 counterpart, section 641(a)(3). [3]

Respondent relies upon various contentions in support of his determination, namely, (1) that certain real estate held of record in joint tenancy vested immediately in Petersen as surviving joint tenant and was therefore improperly administered by the estate; (2) that all of the income-producing assets, namely those of the cattle company, were unnecessarily administered by the estate, and (3) that Petersen, as surviving husband and sole beneficiary under Flora's will, had title to and exclusive possession of all of the community property assets of the estate, specifically the cattle company assets, and should therefore be taxed upon the income of these assets. For the years 1955 and 1956 respondent advocates these additional arguments: (1) The estate had no interest in the income from the cattle company during these years; (2) the administration of the estate was in whole or at least in respect to the income-producing assets unnecessary after September 14, 1954 (the date the Federal estate tax return was filed), and should be disregarded for tax purposes; and finally (3) all of the income was required to be currently distributed to Petersen and is therefore taxable to him under section 662(a) of the 1954 Code.

---

[2] The name of the partnership seems to have become the Petersen Cattle Company by 1953, but there is no dispute that this was still the 1938 partnership under an altered name.

[3] Identical statutory language is involved for all years here in issue.

Included in Flora's estate and in the 1957 petition for termination of joint tenancy was realty held of record in joint tenancy by Flora and Petersen and having an appraised value of $170,636. This land was used by the Petersens in feeding, ranching, and maintaining their livestock. Respondent contends that this was true joint tenancy property, title to which passed to Petersen upon his wife's death, and which did not depend on or require administration. Therefore respondent urges attributing the entire income from this realty and the buildings and fixtures thereon to Petersen. Petitioner does not seem to dispute the proposition that true joint tenancy property passes to the surviving joint tenant by right of survivorship, and should not be included in the estate of the deceased joint tenant, but the parties disagree as to whether or not this was *true* joint tenancy property.

In California property cannot be both community property and joint tenancy property, as the two are mutually exclusive. *Sandrini v. Ambrosetti*, 111 Cal. App. 2d 439, 244 P. 2d 742 (1952) ; *Schindler v. Schindler*, 126 Cal. App. 2d 597, 272 P. 2d 566 (1954). There is a statutory presumption that property acquired by spouses during wedlock is community property,[4] but this presumption is rebutted by the taking of record title by a husband and wife as joint tenants, and there is created instead a presumption of joint tenancy equivalent to a binding agreement to hold the property as joint tenants. *Siberell v. Siberell*, 214 Cal. 767, 7 P. 2d 1003 (1932). It is clear that evidence of an express or implied, written or oral, agreement between the spouses to hold the property as community property is admissible. *Tomaier v. Tomaier*, 23 Cal. 2d 754, 146 P. 2d 905 (1944) ; *In Re Sears' Estate*, 6 Cal. Rep. 148 (1960). Such an agreement, if in writing, need not be executed with any particular formalities. *Wells Fargo Bank & Union Trust Co. v. United States*, 245 F. 2d 524 (C.A. 9, 1957) ; *Strohm v. Strohm*, 5 Cal. Rep. 884 (1960). With exceptions not here relevant, there must be a mutual intent of the spouses to transmute the land into community property. *Bordenave v. United States*, 150 F. Supp. 820 (N.D. Cal. 1957). Where evidence is introduced indicating an intent to hold as community property that which is held of record as joint tenants, it is for the court to determine which line of evidence controls, *Sandrini v. Ambrosetti, supra*, and we must decide whether petitioner's evidence overcomes the presumption created by the form in which title was taken. *Mears v. Mears*, 4 Cal. Rep. 618 (1960).

Petitioner relies primarily on testimony that it was common for partnerships in California not to hold title to real property in the firm name (although they could do so if desired)[5] and on the 1938

---

[4] Cal. Civ. Code, sec. 164.
[5] Cal. Corp. Code, sec. 15008(3).

partnership agreement and events leading up to it. Respondent refers us to the presumption, the recitals in the petition for termination of joint tenancy, and the treatment of the land as joint tenancy property in the inventory and appraisement.

California has been quite liberal in admitting and giving weight to evidence tending to rebut the presumption of joint tenancy arising from the form of record title. Many oral agreements and understandings have been gleaned from the subsequent unequivocal acts and conduct of the spouses with respect to the property. *Pruyn* v. *Waterman*, 172 Cal. App. 2d 133, 342 P. 2d 87 (1959). But in the numerous California decisions applying the rule promulgated in the *Tomaier* case, the actions upon which the courts have rested have been both repugnant to the joint tenancy theory and clearly supporting the transformation into community property. Analyses of these actions can serve only as guideposts, and so using them we have found no transmutation of the joint tenancy realty herein involved.

Examination of the 1931 "certification and declaration" of community property, the reported gift of 1938, and article 7 of the articles of copartnership have led us to conclude that these were all designed to give Flora a one-half interest in Petersen's business and its assets. Since the record is silent as to the dates of the deeds, we must assume, because of petitioner's burden of proof, that she already had a one-half interest in the realty as cotenant of the joint tenancy. By 1938 she also had a one-half present vested interest in the personalty of the business acquired after July 29, 1927.[6] But she did not have more than an expectancy in assets (other than those held in joint tenancy) acquired before that date, until the partnership articles expressly granted it to her. Whether or not this was the subjective motivation of article 7 or of the alleged gift to Flora in 1938, or whether the gift tax returns merely reflected the grants in article 7, we cannot ascertain. Flora is, of course, deceased, and Petersen is so seriously afflicted with cancer as to be unable to testify. Respondent's determination is presumptively correct and we conclude from the record that the evidence adduced by petitioner has not overcome the presumption of joint tenancy involved here.

We agree with petitioner that the joint tenancy property became partnership assets (or was at least utilized by the partnership without objection by either partner), and that the fact that the partnership did not hold title to the land in its own name is not controlling. This proceeding does not involve firm creditors, nor is it to settle the equities of former partners, and therefore no equitable conversion is involved. The property, after Flora's death dissolved the partner-

---

[6] On July 29, 1927, section 161a of the California Civil Code went into effect, giving the wife a present vested one-half interest in the community property. The wife's interest in property acquired before that date was a mere expectancy. *Rogan* v. *Delaney*, 110 F. 2d 336 (C.A. 9, 1940), certiorari denied 311 U.S. 660.

ship, reverted to its prepartnership status. *In Re Inman's Estate*, 148 Cal. App. 2d 952, 307 P. 2d 953 (1957).

Even if we give maximum credence to petitioner's explanation of the 1938 gift and partnership agreement, and give prospective effect to the evidence of intent of the 1931 "certification and declaration," we still feel that Petersen's treatment of the joint tenancy property after Flora's death casts grave doubts on the proposition that he felt it was either community property or the separate property of Flora. Although the recital to the effect that the land remained in joint tenancy until Flora's death, contained in the petition for termination of joint tenancy, is not conclusive and may have been prompted solely by a desire to make the record title clear, it is entitled to some weight. The fact that the joint tenancy property was inventoried as such, and not as community property, is another factor supporting our conclusion that it remained in joint tenancy. Since it is clear that, absent a special agreement, partnership realty not held in the firm name reverts to its prior status when the partnership is dissolved (except as to firm creditors and the equities of partners), we conclude that Petersen's interest in the joint tenancy property became an absolute fee ownership upon the death of Flora on August 13, 1953, and therefore all of the income from this land, including buildings and fixtures thereon, is taxable to him after that date. *In Re Inman's Estate, supra.*

As to Flora's remaining net interest in the partnership included in her estate and totaling about $87,000,[7] the income from which was reported half by Petersen and half by the estate, respondent also contends that administration was unnecessary. Assuming but not deciding that respondent's classification of this property as community property is correct, his argument that administration was entirely unnecessary is without merit. We regarded this theory as "novel and original" when rejecting it in *Marin Caratan*, 14 T.C. 934, 942 (1950), and see no reason to accept it now. Although title to this property "passes" to the legatee at decedent's death pursuant to section 300 of the California Probate Code,[8] it is subject to the possession of the executor and the control of the Superior Court for the purposes of administration, and is chargeable with the debts and expenses of the

---

[7] Eighty-seven thousand dollars is the approximate value of Flora's net interest in non-joint-tenancy partnership properties.

[8] Sec. 300. Decedent's property; passage of title; possession of executor or administrator; charges

When a person dies, the title to his property, real and personal, passes to the person to whom it is devised or bequeathed by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as provided in Division 2 of this code; but all of his property shall be subject to the possession of the executor or administrator and to the control of the superior court for the purposes of administration, sale or other disposition under the provisions of Division 3 of this code, and shall be chargeable with the expenses of administering his estate, and the payment of his debts and the allowance to the family, except as otherwise provided in this code. * * *

estate. The executor is responsible for and chargeable with this property. *In Re Algee's Estate*, 158 Cal. App. 2d 691, 323 P. 2d 221, 225, 226 (1958).

Respondent contends that section 202 [9] and section 203 [10] of the California Probate Code were not considered in *Marin Caratan, supra*, and that such consideration should lead us to a different result. We conclude that the retention of actual possession and control by the husband (subject to being lost under section 300) does not relieve an executor in California of the duty to include the community property assets of the deceased wife in her estate, nor does it relieve him of his fiduciary responsibility for the assets retained by the husband under section 202, or those parcels of community real property dealt with by such husband under section 203. *In Re Algee's Estate, supra*. We therefore adhere to our rejection of this contention of respondent as without merit. *Marin Caratan, supra*.

Respondent's next and quite similar theory is that Petersen, by virtue of being the surviving husband and the sole legatee, had title and exclusive possession to the partnership assets not held in joint tenancy (still assuming them to be community property), and that the income from these assets should be taxable wholly to Petersen. Respondent recognizes the right of the executor and the Superior Court to obtain these assets for the purposes of the estate, but categorizes this right as contingent, and insufficient to justify transferring tax liability to the estate.

Apparently respondent feels that the situation involved here is unique. With the exception of the *Caratan* case mentioned above, we know of no other case where this position has been urged. Cases involving California law seem to have been uniform in taxing one-half of the income from community property during a reasonable administration period to the surviving spouse and the other half

---

[9] Sec. 202. Death of husband, property subject to debts and administration, disposal; death of wife, husband's powers and duties relating to property

Community property passing from the control of the husband, either by reason of his death or by virtue of testamentary disposition by the wife, is subject to his debts and to administration and disposal under the provisions of Division 3 of this code; but in the event of such testamentary disposition by the wife, the husband, pending administration, shall retain the same power to sell, manage and deal with the community personal property as he had in her lifetime; and his possession and control of the community property shall not be transferred to the personal representative of the wife except to the extent necessary to carry her will into effect. * * *

[10] Sec. 203. Surviving husband's power over property; notice of claim of interest under wife's will

After 40 days from the death of the wife, the surviving husband shall have full power to sell, lease, mortgage or otherwise deal with and dispose of the community real property, unless a notice is recorded in the county in which the property is situated to the effect that an interest in the property is claimed by another under the wife's will. Such notice must also (1) describe the property in which an interest is claimed, and (2) set forth the name or names of the owner or owners of the record title to said property. There shall be endorsed on such notice instructions that it shall be indexed by the recorder in the name or names of such owner or owners of the record title to said property, as grantor or grantors, and in the name of the person claiming an interest in said property, as grantee. * * *

to the estate of the deceased spouse. *Wells Fargo Bank & Union Trust Co.* v. *United States, supra.* And in Revenue Ruling 55–726, 1955–2 C.B. 24, respondent ruled:

It is accordingly held that in Washington and California and in all community property states having similar community property laws the estate of a deceased spouse should not, for Federal income tax purposes, be regarded as embracing the whole of the community property; the surviving spouse is the proper taxable person with respect to one-half of the income therefrom. * * *

Before so ruling, respondent had often attempted to attribute *all* of the income from the community property to the estate.

From all of the above, and from cases arising under Texas law, which also passes title to the legatees upon the death of the decedent,[11] it is clear that the immediate passage of title to the legatee does not cause the income from those assets to be taxable to him without actual or required distribution of that income.

It is equally clear that the possession and control of a surviving husband under section 202 is of itself insufficient to cause the entire income from the assets held to be taxable to him. This possession and control is not exclusive; it is subject to the rights of the fiduciary and the supervising court to claim these assets and the income therefrom to pay the estate's creditors, its expenses, and allowances to the family. This right is not properly classified as contingent; it is vested and indefeasible because no person, not even the legatee-manager surviving spouse, can defeat the estate's claim.

Despite the title, possession, control, and interest as surviving husband and legatee held by Petersen, he does not have an unfettered dominion and control over the assets involved. He cannot squander them with impunity any more than he could as manager during Flora's lifetime. If he began to waste them, the executor would be obligated to recoup, as he is responsible as a fiduciary. Petersen could not use the assets as security, because the estate might claim them ahead of any creditor of his, and, to the extent the estate did require some or all of these assets, California has concluded that title was actually never in the surviving spouse. *In Re Algee's Estate, supra; In Re Phillips' Estate,* 123 Cal. App. 2d 570, 266 P. 2d 954 (1954).

These cases establish the proposition that although the surviving spouse gets title to the property of the deceased spouse, the specific assets which are actually received depends upon the decree of distribution, since until then the *primary* right to use these assets is in the estate; the interest of the surviving spouse and legatee being dependent on the nonexercise or partial exercise of the rights of the estate.

---

[11] *Sneed* v. *Commissioner,* 220 F. 2d 313 (C.A. 5, 1955), affirming 17 T.C. 1344.

35 T.C.

Respondent would have us say that management results in complete dominion over, and therefore taxation to, the managing spouse, once the other spouse has died. Mere management is not a sufficient basis for respondent's position.

To tax Petersen as legatee on the entire income of the assets involved requires a conclusion that the income was in fact distributed or required to be distributed to him.[12] We find that the evidence is contrary to this contention of respondent.

Respondent argues that although no attribute of Petersen's relationship to these assets by itself may be sufficient to sustain his position, the aggregate of Petersen's powers in relation to this property is sufficient to justify taxing the entire income from these assets to him. With this contention we must disagree. Congress has determined that decedents' estates are to be taxable entities during the period of administration, unless the income is or is required to be distributed to the devisees and legatees. Secs. 641 and 662, I.R.C. 1954, both *supra*. As we have indicated, Petersen's title was not such as to give him complete control, and the ultimate right of the estate to avail itself of half of the income from these assets compels us to follow the congressional directive and tax that part of the income to the estate. This result is indicated whether these assets were community property or were in fact, to the extent of one-half, the separate property of Flora, and therefore resolution of that issue is unnecessary.

We are not unmindful of respondent's claim that petitioners have indulged in income splitting, but we feel it is without merit. Congress established decedents' estates as taxable entities to avoid unduly burdening devisees who had not received or become entitled to the income from their devises, and that was the situation here.

We conclude that Congress, cognizant of the period of husbandry and control permitted an executor in the prudent administration of the estate, intended to constitute estates as taxable entities upon the income received by them on assets properly held or subject to being held during the regular period of administration. *Estate of B. Brasley Cohen*, 8 T.C. 784 (1947); *Kuldell* v. *Commissioner*, 69 F. 2d 739 (C.A. 5, 1934), affirming 25 B.T.A. 800.

Respondent argues that regardless of our holdings on the above issues, we must sustain his determinations for the years 1955 and 1956. He reasons that administration of the income-producing assets of the estate became unnecessary after September 14, 1954, when the Federal estate tax return was filed, arguing that the June 1954 inventory and appraisement amounted to a winding-up of the partnership's affairs, and that therefore the estate had no interest in or right to any of the income from the cattle business after 1954.

---

[12] Sec. 662(a), I.R.C. 1954.

In support of this argument respondent relies on section 1.641(b)-3(a), Income Tax Regs., which this Court has sustained as reasonable on numerous occasions. The essence of that regulation is that, for Federal income tax purposes, the duration of the administration of an estate is the period actually required by the executor or administrator using reasonable diligence, to perform the ordinary duties of administration, whether or not this period coincides with the duration of the estate as determined by State law. See *Alma Williams*, 16 T.C. 893, 905, and *McCauley* v. *United States*, — F. Supp. — (E.D. Ark., Oct. 28, 1960).

Respondent concedes that after 1954 it was necessary for the estate to retain assets sufficient to meet a possible adverse judgment in favor of Ramsay in the amount of $26,000, and a disputed estate tax liability of about $46,000.[13] Assets thus retained are concededly proper for all years here at issue. However, respondent argues that if all the income-producing assets were distributed, and all other assets retained, these contingencies could have been provided for, and since this *could* have been done, it should be treated as in fact having been done.

We are unimpressed by this argument. We have decided that settlement of disputed claims, including a litigated estate tax dispute, is a valid reason for continued administration of an estate. *Estate of Robert W. Harwood*, 46 B.T.A. 750 (1942); *Alma Williams, supra;* and cf. *William C. Chick*, 7 T.C. 1414 (1946), affd. 166 F. 2d 337 (C.A. 1, 1948), certiorari denied 334 U.S. 845. When faced with claims of the magnitude of those here involved, at least one of which is accruing interest, we fail to perceive the wisdom of requiring an executor to distribute income-producing property and retain non-income-producing property. The amount of property properly included in the estate originally from sources other than the partnership (about $38,000) was insufficient to pay these claims in full. We do not deem it unreasonable or unnecessary to retain for the period of time here involved, approximately $82,000 [14] of assets until the liabilities had been compromised or settled, and we would not expect a prudent executor to disperse his income-producing property first.

Respondent's final contention that all income was required to be distributed to Petersen and is therefore taxable to him under section 662(a), *supra*, merits but brief discussion. Assuming that the partnership was liquidated and wound up in June 1954, we cannot treat the assets as belonging to the legatee because, as indicated above, they were subject to the possession of the executor and the control of the

---

[13] Only $12,000 of this estate tax liability was actually in dispute, but in developing his argument respondent does not reduce the size of the total estate by the $34,000 which was paid in September 1954.

[14] The gross estate (excluding joint tenancy properties) as reduced by claims and taxes actually paid.

Superior Court, and there was no assurance that these specific assets or the income therefrom would remain in the estate at the time of final distribution. Since the income was neither currently distributable nor required to be so, Petersen cannot be taxed thereon as the income was received by the estate within its proper "period of administration." If we adopted respondent's contention, we would be required to assume that the tax statutes require an executor to pay to himself as sole legatee so much of the estate's assets as to leave it unable to meet asserted but contested claims. We see no reason for such an assumption.

We conclude that as to the non-joint-tenancy property which was being used in the partnership's business, the estate of Flora M. Petersen is the proper taxpayer with respect to one-half of the income from this property for all years here involved, and that with respect to such income respondent's determinations were erroneous. Since the parties throughout have treated the income of the partnership's business as having been produced from its assets pro rata to the values of such assets, that same method will be used in the decisions to be entered under Rule 50.

*Decisions will be entered under Rule 50.*

