[L. A. No. 26400. In Bank. Dec. 4, 1962.]

*JULIAN M. SIEROTY et al., as Executors, etc., et al., Cross-complainants and Appellants, v. ETHEL E. SILVER, Cross-complainant and Cross-appellant.

*In the District Court of Appeal this case was entitled *Occidental Life Ins. Co.* v. *Sieroty.*

S. V. O. Prichard for Cross-complainants and Appellants.

Robert I. Kronick for Cross-complainant and Cross-appellant.

McCOMB, J.—Occidental Life Insurance Company of California filed a suit in interpleader for the purpose of obtaining an adjudication as to who was entitled to the proceeds of two policies of life insurance.

The named defendants are the surviving widow of the deceased insured and the executors of his will.

After depositing the proceeds of the policies with the court, plaintiff insurance company was discharged from further participation in the matter.

*Facts:* The executors filed a cross-complaint, in which they claimed they were entitled to the proceeds, totaling $90,062.05, because at the time of the death of the insured they were the named beneficiaries of the policies.

The widow also filed a cross-complaint. In the first count she claimed that she was entitled to the entire proceeds as her separate property, on the ground that she had originally been designated the beneficiary under each policy; that the policies constituted community property of the decedent and herself; and that the attempted changes of beneficiary were made without her knowledge or consent and without the receipt of any consideration and were therefore without force and effect.

In additional counts she claimed that she was entitled to the entire proceeds on the ground that the decedent either was incompetent at the time he executed the changes of beneficiary or had agreed in 1946 to take out the policies and make her the sole and irrevocable beneficiary.

The executors contend that the policies were the separate property of the decedent and, in the alternative, assuming they were community property, that section 202 of the Probate

Code requires that the proceeds be delivered to them, to be administered in the decedent's estate.

The executors objected to the introduction of any evidence on the first count of the widow's cross-complaint, on the ground that the superior court sitting in probate has exclusive jurisdiction to determine what constitutes community property; but the objection was overruled.

The trial court found that the decedent was competent to execute the changes of beneficiary and that he had not agreed to obtain the insurance and make his wife the sole and irrevocable beneficiary thereof, but found that the premiums had been paid with community funds and that the proceeds constituted community property and awarded the widow half the proceeds as her *separate property*. The other half was awarded to the executors. The court ordered the funds disbursed in accordance with its judgment. Both the widow and the executors appeal.

■ *Questions:* First. *Did the superior court not sitting in probate have jurisdiction to determine the controversy?*

*Yes.* The widow claimed that the entire proceeds constituted her separate property. Accordingly, she was claiming adversely to the estate, not in privity with it; and since she was not a personal representative of the estate, the superior court sitting in probate would not have had jurisdiction to decide the claim. (*Merola* v. *Superior Court,* 125 Cal.App.2d 1, 4 [2], [3] [269 P.2d 664] [hearing denied by the Supreme Court].) Therefore, it was a matter in which only the superior court not sitting in probate had jurisdiction. (See *Ludwicki* v. *Guerin,* 57 Cal.2d 127, 130 [1], [2] [17 Cal.Rptr. 823, 367 P.2d 415]; *Schlyen* v. *Schlyen,* 43 Cal.2d 361, 374 [16] et seq. [273 P.2d 897]; *Wells Fargo Bank etc. Co.* v. *Superior Court,* 32 Cal.2d 1, 12 [193 P.2d 721]; *Medeiros* v. *Cotta,* 130 Cal. App.2d 740, 746 [2] et seq. [279 P.2d 814]; *Colden* v. *Costello,* 50 Cal.App.2d 363, 368 [2] et seq. [122 P.2d 959] [hearing denied by the Supreme Court]; *McCaughna* v. *Bilhorn,* 10 Cal.App.2d 674, 684 [5] [52 P.2d 1025] [hearing denied by the Supreme Court].)

■ Second. *Did the trial court properly award the widow half the proceeds of the policies as her separate property?*

*No.* ■ The interest of the beneficiary of a life insurance policy designated by an insured who has the right to change the beneficiary is not a vested right but a mere expectancy, and the insured may change the beneficiary at any time dur-

ing his lifetime. (*Grimm* v. *Grimm*, 26 Cal.2d 173, 175 [3] [157 P.2d 841].)

In the present case, the decedent was under no obligation to retain his wife as the named beneficiary of the policies. He had a right to revoke the inchoate gift to her that he made in 1946, when he first designated her as the beneficiary. The changes of beneficiary achieved that revocation.

█ █ Nevertheless, a policy of insurance on a husband's life is community property when the premiums have been paid with community funds; and even though the insurance contract gives the husband the right to change the beneficiary without the wife's consent when she is designated as such, any such change without her consent and without a valuable consideration other than substitution of beneficiaries is voidable, and after the husband's death the wife may maintain an action for her *community* share in the proceeds of the policy. (*Tyre* v. *Aetna Life Ins. Co.*, 54 Cal.2d 399, 402 [1], 404 [6] [6 Cal.Rptr. 13, 353 P.2d 725]; *Grimm* v. *Grimm, supra,* 26 Cal.2d 173, 175 [2]; *New York L. Ins. Co.* v. *Bank of Italy,* 60 Cal.App. 602, 606 [214 P. 61] [hearing denied by the Supreme Court].)

On the death of the husband, however, all the community property is subject to administration in his estate and is chargeable with a proportionate part of the debts and the expenses of administration. (Prob. Code, §§ 202, 300[1]; *Estate of Coffee,* 19 Cal.2d 248, 250 et seq. [120 P.2d 661]; *Estate of Manley,* 169 Cal.App.2d 641, 644 [1] [337 P.2d 487]; *Estate of Algee,* 158 Cal.App.2d 691, 697 [323 P.2d 221]; *Chase* v. *Leiter,* 96 Cal.App.2d 439, 457 [215 P.2d 756].)

█ As we said in *Estate of Coffee, supra,* at page 252 [3] : ". . . the portion of the community property which belongs

[1] Section 202 of the Probate Code reads, in part: "Community property passing from the control of the husband, either by reason of his death or by virtue of testamentary disposition by the wife, is subject to his debts and to administration and disposal under the provisions of Division III of this code . . . ."

Section 300 of the Probate Code (which is in division III) reads: "When a person dies, the title to his property, real and personal, passes to the person to whom it is devised or bequeathed by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as provided in Division II of this code; but all of his property shall be subject to the possession of the executor or administrator and to the control of the superior court for the purposes of administration, sale or other disposition under the provisions of Division III of this code, and shall be chargeable with the expenses of administering his estate, and the payment of his debts and the allowance to the family, except as otherwise provided in this code."

to the wife is the one-half which remains after the payment
of the husband's debts and the expenses of administration
apportioned between the community and separate property in
accordance with the value thereof, and this is true even when
the husband's share of the community, together with his
separate property, is ample to pay those debts and expenses.''

Furthermore, a decree of distribution by the superior
court sitting in probate is indispensable as a muniment of a
widow's title to property which comes to her as survivor of
the community. (*Estate of Nash,* 132 Cal.App.2d 233, 237
[2] [282 P.2d 184]; *Colden* v. *Costello, supra,* 50 Cal.App.2d
363, 370.)

Accordingly, after a determination, supported by
substantial evidence, that all the premiums on the policies
had been paid during the marriage from community funds
and that the proceeds constituted community property, in
which the widow had a one-half interest, the trial court should
have awarded possession of the proceeds to the executors, in
accordance with the provisions of section 202 of the Probate
Code.[2]

The widow contends that the trial court correctly ordered
that half the proceeds be paid directly to her, citing *Travelers
Ins. Co.* v. *Fancher,* 219 Cal. 351, 356 [3] [26 P.2d 482]. In
that case it was held that a surviving wife was entitled to
have her community property interest in the proceeds of
certain policies of insurance on the life of her deceased hus-
band, under which policies other persons had been named
beneficiaries, paid directly to her. The effect of section 202
of the Probate Code, however, was apparently not considered.
To the extent that the holding in *Travelers Ins. Co.* v. *Fancher,*
*supra,* is inconsistent with our holding here, it is overruled.

Third. *Was the evidence sufficient to support the findings of
the trial court (a) that the decedent was competent to execute
the changes of beneficiary on the policies, and (b) that it is
not true that the decedent agreed to obtain additional life
insurance upon his life and make his wife the sole and
irrevocable beneficiary of such insurance?*

*Yes.* (a) The widow admits that there were several
persons who testified that the decedent was competent. There

---

[2]If the designation of the widow as beneficiary had not been changed,
the proceeds would have vested in her as her separate property even
though all the premiums had been paid with community funds. (*Estate
of Miller,* 23 Cal.App.2d 16, 18 [2] [71 P.2d 1117] [hearing denied by
the Supreme Court]; cf. *Ballinger* v. *Ballinger,* 9 Cal.2d 330, 333 [1]
[70 P.2d 629].)

was thus nothing more than a conflict in the evidence, and the trial court rejected her evidence that he was incompetent.

There was also evidence that continuously to the time of his death the decedent actively engaged in all his usual business activities, operating a hotel, two apartment houses and a dress manufacturing business, continuously writing checks and making contracts such as borrowing money, and that the widow sought neither to curtail his activities nor to have him declared incompetent.

 (b) The widow testified: "He said he had appreciated my help constantly from the time we first married and that we had always shared and shared alike. That whatever he had was mine and whatever I had was his, there was to be no difference then or in the future. And we talked about the possibility of the heirs still living in Poland. He felt that was a fruitless possibility. And he talked about our making mutual wills which would be irrevocable. And we discussed the terms of these wills, what we thought we wanted to do about leaving our estate. And then he said further during that time that in consideration of these wills he wanted to insure me with a very sizable policy and this policy would be mine."

In her deposition she also said, "Well, he said immediately at that time that inasmuch as I had helped him throughout our married life, I had worked continuously, contributed whatever my earnings were towards both of us, that the very least he could do was have things in my favor and in his favor; that he wanted us to make reciprocal irrevocable wills naming each other as beneficiary.

"He said in that conversation he would take out insurance in a sizable amount for my protection because, after all, there probably would be taxation to consider and other expenses if he predeceased me. That is as far as I can remember."

This is the entire evidence as to both the existence of the claimed contract and its content. There is not a single word in the testimony that anything was said about "an irrevocable beneficiary" or how much insurance would be procured or when it was to be procured or what the parties believed was a "very sizable policy." Furthermore, it was problematical whether the decedent would even be able to procure any insurance.

We have examined the record and are of the opinion there was substantial evidence, considered in connection with such

inferences as the trial court may reasonably have drawn therefrom, to sustain each and every material finding of fact upon which the judgment in favor of the executors on the second and third counts of the widow's cross-complaint was necessarily predicated. We therefore refrain from further discussion of the evidence. (*Fomco, Inc.* v. *Joe Maggio, Inc.*, 55 Cal.2d 162, 164 [10 Cal.Rptr. 462, 359 P.2d 918] ; *Thatch* v. *Livingston*, 13 Cal.App.2d 202, 203 [1] [56 P.2d 549].)

The judgment, in so far as it directs that half the proceeds of the policies be paid to the widow as her separate property and the other half be paid to the executors, is modified to direct that the entire proceeds, constituting community property of the decedent and the widow, be paid to the executors, in accordance with the provisions of section 202 of the Probate Code, and, as so modified, the judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., and Tobriner, J., concurred.