EMILIA ISLAS, Individually and as Administratrix, etc., Plaintiff and Respondent, v. PETRA N. ISLAS, Defendant and Appellant.

Charles Murstein and Richard McLeod for Defendant and Appellant.

John F. Sheffield for Plaintiff and Respondent.

HERNDON, J.—Defendant Petra N. Islas appeals from a judgment in favor of plaintiff in a suit brought to determine the ownership of certain real property and to obtain declaratory relief. Plaintiff also was granted a writ of possession and an award of damages for the reasonable rental value of the property for the period during which appellant remained in possession.

The complaint alleges in substance: that plaintiff's husband,

Jesus Islas, had acquired the described real property during their marriage and had paid the entire purchase price with community funds; that thereafter her said husband had died intestate; that the defendant, who was decedent's mother, had been in possession of the property under some claim of title and had paid plaintiff nothing for the use thereof since her husband's death; and that the reasonable rental value of the property was $150 per month. Defendant made no objection to the form or content of this complaint, but answered by way of general denial, affirmatively admitting however: (1) that she was in possession of the described property; (2) that she claimed an interest therein; and (3) that she had paid plaintiff nothing by way of rental for the use of the property.

By means of pretrial proceedings, the parties were able to reduce the issues to be tried to three, namely: (1) the marital status of plaintiff Emilia and the decedent Jesus at the time the property was purchased and during the time when the payments therefor were made; (2) the status of funds used in the purchase of the subject property and the resulting status of the real property, itself; and (3) the amount of rental, if any, owing from defendant to plaintiff. The joint pretrial statement of the parties and the court order based thereon effectively supplemented the pleadings, clarified the nature of the action and the legal theories of the parties in respect thereto, and indicated that essentially plaintiff was seeking to establish a resulting trust.

The parties agreed that the property originally was purchased in March of 1952 and taken by the purchaser subject to two existing encumbrances; that said encumbrances had been extinguished; that title had been taken in the name of defendant Petra N. Islas who was the mother of Jesus; that Jesus died intestate on November 2, 1958; that defendant had been in exclusive possession of the property since the latter date; and *"that any monies allegedly advanced by Jesus Islas toward the purchase of subject real property were never intended to be a gift, loan, or joint-venture investment to or with any other person."* (Italics added.)

In addition to these agreed facts, the contentions of the parties as set forth in their joint pretrial statement made it abundantly clear that this was not an action based upon the right of a wife to recover community property transferred by her husband without a valuable consideration, but rather was one seeking to recover real property from a party holding the

legal title thereto under a resulting trust.[1]   That is, both parties agreed that Jesus Islas did not intend to make a gift or otherwise to transfer the equitable title to the property to defendant.   Therefore, if plaintiff's contentions were correct and the property was purchased by her husband with community funds, she would be entitled to the whole thereof under the terms of section 201 of the Probate Code.[2]   On the other hand, if defendant's contentions were correct and the property had not been purchased by Jesus Islas, but had been purchased by defendant with her own funds, then she would be entitled to the whole thereof.

Following a nonjury trial upon these sharply defined legal theories and factual issues, the court made findings to the following effect: that the real property was purchased by Jesus Islas with community funds; that although title was placed in the name of his mother, the defendant, she had contributed nothing toward the purchase of the property; that Jesus and plaintiff intermarried on July 20, 1942, and remained husband and wife until he died intestate on November 2, 1958; that defendant had remained in possession of the property since the death of Jesus without making any payment for the use and occupancy thereof; and that the reasonable value thereof was $150 per month.

Accordingly, the court concluded that plaintiff was the owner of the real property; that defendant was without any right or title with respect thereto; and that plaintiff was entitled to recover possession of the property, together with the sum of $150 per month from the date of the decedent's death until defendant surrendered possession.   Judgment was rendered accordingly and defendant made no objection to the form thereof.

Appellant's first assignment of error challenges the sufficiency of the evidence to support the finding that Jesus purchased the property.   The validity of the marriage is not challenged nor is it questioned that if the property was purchased by Jesus, the monies used therefor were community.

[1]Section 853 of the Civil Code provides: "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

[2]Section 201 of the Probate Code provides: "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of sections 202 and 203 of this code."

416

■ " 'It is fundamental that where a judgment is attacked on the ground that it is not supported, the power of the appellate court ends when it shall once have determined that there is substantial evidence which will support the conclusions of the trial court.' [Citations.] And that rule is applicable where the action is one to enforce a resulting trust.

■ Whether the evidence to prove the existence of the trust is clear, satisfactory and convincing 'is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.' [Citations.] ■ Likewise, in such cases the credibility and weight of the evidence are exclusively for the trial court. [Citations.]'" (*Viner* v. *Untrecht*, 26 Cal.2d 261, 267 [158 P.2d 3].)

■ The evidence presented by plaintiff on this issue was in many aspects absolutely conclusive. By means of bank records and the original escrow papers, she was able to demonstrate that the original downpayment on the subject property was made exclusively by the decedent by means of transfers of the exact sums from his savings account at one branch of the Bank of America to the escrow department in another branch of the same bank which handled the purchase. Although defendant did not testify in her own behalf, when called by plaintiff under section 2055 of the Code of Civil Procedure she asserted that she made all payments on the property. However, she either could not, or would not, offer any explanation as to how she came to have such sums of money, since she did not work and was supported entirely by her children.

Plaintiff conclusively established also that one of the remaining encumbrances was paid off by a loan obtained by the decedent from the credit union operated by his employer. The records of the credit union reflected that this loan thereafter was repaid by deductions from his salary. Evidence was also presented that Jesus, in the presence of defendant and others, stated: "This is the house I bought." Defendant never objected thereto nor expressed any contrary claim of ownership. A letter written by Jesus was introduced into evidence wherein he stated: "I bought a very good house, very big. It cost me $10,200 and very soon I will be able to finish paying for it. I owe $1,600 on it, but I have the money."

Against this evidence defendant, who did not elect to testify in her own behalf, offered the testimony of her two daugh-

ters that they worked while living with their mother and gave her all their earnings, less necessary expenses, and that she returned this money to them so that they could make the payments on the house. However, the trial judge expressly stated that he did not give credence to the testimony of these witnesses. In view of the fact that they were unable to offer any corroborative proof by way of receipts, or otherwise, and that such records of their earnings as were presented to the court indicated they earned approximately $2,000 each during the years in question, and never more than $3,000, there certainly was no compelling reason requiring the court to accept their testimony. The evidence was more than sufficient to support the findings of the court in this particular.

Defendant next asserts that the complaint does not state facts sufficient to constitute a cause of action in favor of plaintiff in her capacity as administratrix of her husband's estate. In support of this contention, defendant makes the peculiar argument that an action to recover community property voidably transferred by the husband without consideration is personal to the wife and may not be maintained by his personal representative after his death. The weakness of this argument stems first from the fact that this action was brought by the wife both in her personal capacity and in her capacity as her husband's personal representative. The record throughout reflects this fact and defendant's full awareness thereof. Secondly, and more to the point, this was not an action seeking to rescind a voidable transfer of community property. Defendant herself at all times most emphatically stressed the fact that the decedent did not transfer the property to her and hence that no gift was ever made or intended.

Further, it never has been contended that any payments made by the deceased husband were made with other than community funds. Therefore, if the court found that such payments were in fact made it would, of necessity, have to find the property acquired thereby was community property. Community property is subject to administration upon the death of either of the spouses. (Prob. Code, § 202; *Sieroty* v. *Silver*, 58 Cal.2d 799, 803-804 [26 Cal.Rptr. 635, 376 P.2d 563].) The personal representative of the deceased, therefore, at the very least, was a proper party plaintiff in this action. (*Rice* v. *Carey*, 170 Cal. 748, 750-751 [151 P. 135].)

Defendant next assigns as error the award to plain-

tiff of more than one-half of the property in issue. Conceivably it might be true that if defendant had permitted the trial court to entertain the possibility that the decedent had purchased the property and had placed it in her name for the purpose of effecting a gift, the trial court might have so determined. ▮ The presumption created by Civil Code, section 853, does not apply where a gift is made to a natural object of the donor's bounty. (*Hamilton* v. *Hubbard*, 134 Cal. 603, 605 [65 P.321, 66 P. 860] ; *Finnegan* v. *Hernandez*, 74 Cal.App.2d 51, 54 [168 P.2d 32].)

▮ However, this possibility was foreclosed by the defendant's positive and unqualified insistence throughout that she personally made *all* the payments on the house with her own funds and that the decedent had made *none*. In her joint pretrial statement, she contended that any monies her son might have given her during the period in question were by way of *rental* payments and not by way of monies to be used in purchasing the house. And when she was called by plaintiff under section 2055, she denied that her son had given her any money at all.

In connection with this alleged error, defendant also asserts that since plaintiff would be entitled to no more than a one-half interest in the property, defendant should be considered as a tenant in common with plaintiff, and, therefore, that the allowance of rentals was improper. As heretofore indicated, this basic contention is without merit, for the case as presented by defendant herself precluded such a determination. ▮ It long has been the law in California that when a trustee denies the rights of the equitable owner and exercises exclusive possession under claim of right, he is chargeable with the reasonable rental value of the property. (*Heinlen* v. *Martin*, 53 Cal. 321, 345.) ▮ Further, where a resulting trustee has denied the existence of the trust relationship and has not pleaded that he has made any advancement on account of the trust property, and where his evience as to expenditures was introduced solely in furtherance of his claim of absolute ownership of the property, he may not on appeal seek reimbursement for such expenditures on a different theory. (*Berniker* v. *Berniker*, 30 Cal.2d 439, 450-452 [182 P.2d 557].) Therefore, defendant's assertion that she should have been allowed reinbursement for taxes paid is without merit.

Defendant's final assignment of error is that "conclusions of law, based upon unsupported findings, do not support the

judgment.'' This, of course, is correct, but, as has been pointed out, the findings in the instant case are amply supported by the evidence.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 24, 1963.

[Civ. No. 26315. Second Dist., Div. Two. Feb. 27, 1963.]