Filed 6/30/14  Marriage of Shannahan CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of SARACIA and WILLIAM P. SHANNAHAN. | D062062 |
| SARACIA SHANNAHAN, Petitioner, v. WILLIAM P. SHANNAHAN, Respondent. | (Super. Ct. No. D483710) |
| BROOKMEAD PARTNERS, L.P., Plaintiff and Appellant, v. SARACIA SHANNAHAN, Defendant and Respondent; WILLIAM P. SHANNAHAN, Defendant and Appellant. | (Super. Ct. No. 37-2009-00095945-CU-MC-CTL) |

APPEALS from a judgment of the Superior Court of San Diego County, Lorna Alksne, Judge.  Affirmed.

Smylie & Van Dusen and Scott A. Smylie for Plaintiff and Appellant Brookmead Partners L.P.

Higgs, Fletcher & Mack, John Morris; RSR Law Group and James J. Reynolds for Defendant and Appellant William P. Shannahan.

Law Office of Beatrice L. Snider, Win Heiskala; Stephen Temko; Janis Law Group, Dean T. Janis and Deval R. Zaveri for Defendant and Respondent Saracia Shannahan.

This case pertains to the disposition of homeowner insurance proceeds paid on the destruction of Saracia Shannahan and William P. Shannahan's[1] community property residence in La Jolla. Brookmead Partners, LP (Brookmead Partners), an entity William created, appeals a judgment denying its request for a judicial declaration that it is entitled to the proceeds under a resulting trust theory even though it was not a named insured under the policy, based on William's testimony that two premium payments he made from his personal checking account were intended to be a loan to Brookmead Partners. William joins in Brookmead Partners' briefing. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Saracia and William married in 1983 and separated in 2004. William was a practicing attorney at the time of the marriage and a tax law specialist.

_____

1    We use the parties' first names as is customary in family law proceedings.

2    We have addressed the background facts of this dissolution action in several previous appeals. (*In re Marriage of Shannahan* (Dec. 1, 2010, D053701, D055292) [nonpub. opn.]; *In re Marriage of Shannahan* (July 18, 2011, D057453) [nonpub. opn.]; *In re Marriage of Shannahan* (Nov. 10, 2011, D058220) [nonpub. opn.].) Here, we recite only the facts and procedure pertinent to the issue on appeal.

Between late 2006 and early 2007 the parties had a multiple day trial before retired Judge Thomas Ashworth III at Judicial Arbitration and Mediation Services (JAMS), culminating in August 2008 in a judgment on reserved issues. In relevant part, Judge Ashworth ruled that the family residence (the Brookmead property) was community property and William breached his fiduciary duty to Saracia, in violation of Family Code sections 721 and 1100, by transferring it to other entities (including Brookmead Partners) without her knowledge, consent, or adequate compensation to the community. The judgment states "this community property interest overcomes the claim of title or other title interests claimed by [William] to be in other entities, joined or otherwise." Judge Ashworth determined that William "is the one common denominator and alter ego in all of these other entities," but his "conduct in these various transfers is neither fraudulent nor illegal." Based on the parties' stipulation that the land and residence were worth $4.1 million, and Judge Ashworth's finding the property carried no recognizable debt, he awarded Saracia $2,050,000 for her one-half interest.[3]

In December 2007 after trial but before entry of judgment, the Brookmead property was destroyed by fire. The structure and contents were insured under a policy

_____

[3]     In a statement of decision preceding the judgment, Judge Ashworth noted: "This is perhaps the most convoluted and contentious case the Court has encountered in 45 years of experience. Most of the assets acquired during marriage are currently owned by trusts, partnerships or corporations and some of these entities have, or had, connections in the Cayman Islands, Hong Kong or Nevada. . . . It is essentially [William's] position that there is no community property. This is based on a combination of [William's] claims of an oral transmutation, tracing from his separate property and the fact that most of the assets are now owned all, or in part, by separate legal entities which have not been joined to the action."

3

issued by Interinsurance Exchange of the Automobile Club (AAA) to Saracia and William as the named insureds. In April 2008 AAA sent William a check for $957,525.23, made payable to him and Saracia. He deposited the check into a new account he opened, titled "William P. Shannahan, Brookmead Fire," but it did not clear.

Saracia applied ex parte for an order requiring that any replacement check from AAA be deposited in a trust account with the law firm representing William, Higgs, Fletcher & Mack (Higgs Fletcher). Judge Ashworth granted the order, and AAA issued a replacement check to Higgs Fletcher. Judge Ashworth retained jurisdiction over disposition of the proceeds.

In August 2009 Brookmead Partners filed a complaint for declaratory relief against AAA, Saracia, William, and Higgs Fletcher. It was consolidated with the family law case. The operative second amended complaint (SAC) sought a judicial declaration that Brookmead Partners was the owner of the insurable interest in the Brookmead property and "the rightful and equitable insured" under the AAA policy; it was entitled to the $957,525.23 in insurance proceeds; William and Saracia were not the owners of the insurable interest in the property and had no claim to the proceeds; and Saracia's judgment for her one-half interest in the property terminated any interest she may have had in the proceeds. William filed a disclaimer of any interest in the proceeds.

Judge Lorna Alksne handled the September 2011 trial. At its commencement, Brookmead Partners advised the court "that we're not necessarily trying to prove that William and Saracia are not owners of the insurable interest" in the Brookmead property. The court found there were two principal controverted issues, whether Brookmead

4

Partners had an insurable interest in the property, and if so, whether it was entitled to the insurance proceeds.

The evidence showed the Brookmead property was purchased for $730,000 in November 1987, and William unilaterally decided title would be held by Northwest Financial, Inc. (Northwest Financial), a Nevada corporation he created "primarily for tax reasons." In December 1987 William caused Northwest Financial to sell the property for $750,000 to the Shannahan Marital Trust (Marital Trust) under an installment land contract.

In January 2003 William created Brookmead Partners (initially, as a California general partnership), between William P. Shannahan, APLC, and the Marital Trust. At the same time, William signed a fourth amendment to the land contract, both as cotrustee of the Marital Trust and as the president of Northwest Financial, increasing the sale price of the Brookmead property to $1.2 million to reflect improvements made to the property.

William then undertook a series of transactions that culminated in June 2003 with the extinguishment of the vendor's (Northwest Financial) and the vendee's (Marital Trust) interests in the land contract and interests in the Brookmead property being transferred to Brookmead Partners. William, however, kept title in Northwest Financial until May 2008, when, without notice to Saracia, he caused title to be conveyed to Brookmead Partners (converted in 2007 to a Nevada limited partnership).

According to the limited partnership agreement, Brookmead Partners' general partner was Virginia Way, L.P., a Nevada limited partnership (18.25 percent interest). The limited partners were Saracia (12.25 percent interest); William P. Shannahan, APLC

5

(1.0 percent interest); Shannahan Investments, Inc., a Nevada corporation (23.5 percent interest); Northwest Financial Limited, a Nevada limited partnership (21 percent interest); and BLLJ, a Nevada limited partnership (24 percent interest). William signed the limited partnership agreement on behalf of all partners, including Saracia, with the notation, "(By Virginia Way L.P., General Partner, Power of Attorney under 10.1)." He admitted he never discussed the agreement with her.

In the fall of 2003, AAA issued a homeowners policy on the Brookmead property to Saracia and William as the named insureds. William signed the application, and the policy was renewed annually until the fire. For the final policy period, William received a bill from AAA with a minimum due of $865.46. In November 2008 William paid that amount by a check titled "Shannahan Corp." In December 2008 William made a payment of $871.77 to AAA on the same account. He testified, "Shannahan Corp. is just a name that was put on an account . . . that I opened, I believe, back in early 2002." He also testified Brookmead Partners had no money, and "I had to lend the money to Brookmead [Partners] to pay the premium."

Further, William testified that in 2003, acting as cotrustee of the Marital Trust, he assigned any benefits under the AAA policy to Brookmead Partners. William conceded there was no written assignment. He also conceded he never applied for insurance in Brookmead Partners' name, notified AAA he was applying for insurance on behalf of that entity, or notified AAA the insurance proceeds belonged to Brookmead Partners. He stated, "I have, in effect, assigned [the benefits] because of my responsibility as the

6

manager of the general partner of Brookmead Partners . . . . I had a fiduciary responsibility that those proceeds belonged to the partnership."

Saracia testified that she first learned of William's business dealings during the dissolution proceedings. Until then, she was unaware of the installment land contract between National Financial and the Marital Trust, the existence of Brookmead Partners, and the series of transactions that resulted in title to the Brookmead property being conveyed to Brookmead Partners. She had not seen the 2007 limited partnership agreement of Brookmead Partners, and William never discussed it with her. Further, William did not have the authority to sign the agreement for her. During the marriage he once asked for her power of attorney, and she refused. She also testified she did not assign her right to insurance proceeds to any entity or give William the authority to do so.

Saracia argued that if the insurance proceeds went to Brookmead Partners, William would get them as the alter ego of the entity. William denied having any personal interest in the proceeds. Rather, he testified that the parties' two adult children would benefit if they went to Brookmead Partners because irrevocable trusts he created for them held interests in various entities that are partners of Brookmead Partners. As the court noted, however, the copy of the children's trust that he produced did not include Schedule A, the list of trust assets.

The court took the matter under submission, and in March 2012 it issued a statement of decision denying Brookmead Partners any declaratory relief. The court expressly found William's testimony was self-serving and not credible, and Saracia's testimony was credible.

The court determined Brookmead Partners had no insurable interest in the Brookmead property based on legal title, because it was not conveyed until after the fire, but it had an "insurable *equitable* interest" that existed at the time of the fire. The court, however, found Brookmead Partners lacked standing to contest Saracia and William's insurable interest in the property, because in California only an insurer may raise the issue of insurable interest, and AAA waived the issue by paying the policy proceeds to Saracia and William. The lack of standing effectively precluded Brookmead Partners from obtaining the requested declaratory relief.

Alternatively, the court determined that even if Brookmead Partners had standing, it was not entitled to the insurance proceeds because it was not insured under the AAA policy. The court explained: "There is no documentary evidence to support [Brookmead Partners'] contention that William and Saracia purchased the insurance in their capacities as co-trustees of the Marital Trust. There is no persuasive evidence to support [Brookmead Partners'] factual or legal contention that William and Saracia were the named insureds on the policy as a matter of convenience or as *resulting trustees* for Northwest Financial . . . or Brookmead [Partners]. There is no persuasive evidence . . . to prove that the 2007 insurance policy was acquired in the name of the partnership or that it was purchased with partnership funds paid on behalf of Brookmead [Partners]. To the contrary, William testified that he never applied for insurance in the name of either the Marital Trust or Brookmead [Partners] nor is there any document formally assigning the insurance proceeds to any entity." (Italics added.)

8

The court specifically rejected William's testimony that his payment of policy premiums from his personal account was intended to be a loan to Brookmead Partners. The court also noted there was no corroborating evidence.

Further, the court found that Saracia and William had an insurable interest in the Brookmead property, based on law of the case classifying it as community property. The court determined Saracia was not entitled to the insurance proceeds because she was awarded a money judgment against William for one-half its stipulated value. Although William disavowed any interest, the court awarded him the proceeds, explaining that "[t]o not award the money to someone would be an illogical and absurd ending to this heavily litigated, time-consuming and expensive three year old issue."

Judgment was entered on April 27, 2012. It specified that the insurance proceeds were to remain in the client trust fund "pending disbursement pursuant to court order or judgment."

## DISCUSSION

### I

### *Lack of Standing to Raise Issue of Insurable Interest*

Brookmead Partners challenges the court's rejection of its argument that it was an insured under the AAA policy under a resulting trust theory.[4] Brookmead Partners,

---

4       William's appeal is a joinder in Brookmead Partners' position. Given our holding as to Brookmead Partners, we decline to address Saracia's contention that William lacks standing to appeal because he is not aggrieved by a judgment that awards him the insurance proceeds.

9

however, ignores the court's first ground for denying declaratory relief, that it *lacked standing* to "raise the question of insurable interest or lack thereof."

In its statement of decision, the court cited 2 Witkin, Summary of California Law (10th ed. 2005) Insurance, section 75, page 119, which states: "The insurer is the only party that can raise the question of lack of insurable interest. [Citation.] If the insurer waives the question of insurable interest and pays the money to the named beneficiary or into court, other interested parties cannot claim the proceeds on that ground." (*Ibid.,* citing *In re Marriage of Bratton* (1994) 28 Cal.App.4th 791, 794 [husband lacked standing to question whether ex-wife had insurable interest justifying her retention of policy on his life] & *Jenkins v. Hill* (1939) 35 Cal.App.2d 521, 524.) The court reasoned that AAA's payment of insurance proceeds to Saracia and William constituted its waiver of the insurable interest question, and since Brookmead Partners lacked standing to pursue the issue it could not collect on the policy.

"On appeal, a judgment of the trial court is presumed to be correct. [Citation.] Accordingly, if a judgment is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning." (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) " 'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant *fails to raise a point*, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' [Citation.] 'We are not bound to develop appellants' argument for them.' " (*Ibid.*, italics added.) We deem the standing issue waived or forfeited, and affirm the judgment on that ground.

10

## II

### *Resulting Trust Theory*

Moreover, even without waiver, we affirm the judgment because Brookmead Partners has not shown the court erred by rejecting its resulting trust theory. " 'A resulting trust arises by operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest. [Citations.] Such a resulting trust carries out and enforces the inferred intent of the parties. [Citations.]' [Citation.] 'It has been termed an "intention-enforcing" trust, to distinguish it from the other type of implied trust, the constructive or "fraud-rectifying" trust. The resulting trust carries out the inferred intent of the parties; the constructive trust defeats or prevents the wrongful act of one of them.' " (*Fidelity National Title Insurance Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 847-848.) "[T]he relationship between resulting trustee and beneficiary arises where one, in good faith, acquires title to property *belonging to another*." (*In re Estate of Yool* (2007) 151 Cal.App.4th 867, 874.)

"Clear and convincing proof is required to support a declaration that a resulting trust exists." (*Johnson v. Johnson* (1987) 192 Cal.App.3d 551, 556.) " ' "It is fundamental that where a judgment is attacked on the ground that it is not supported, the power of the appellate court ends when it shall once have determined that there is substantial evidence which will support the conclusions of the trial court." [Citations.] And that rule is applicable where the action is one to enforce a resulting trust. Whether the evidence to prove the existence of the trust is clear, satisfactory and convincing "is primarily a question for the trial court to determine, and if there is substantial evidence to

11

support its conclusion, the determination is not open to review on appeal." ' " (*Islas v. Islas* (1963) 213 Cal.App.2d 412, 416.)[5]

Brookmead Partners relies on language from the AAA policy that "[w]e will pay you unless another payee is named in the policy or is *legally entitled to receive payment*." (Italics added.) Brookmead Partners asserts that although it was not a named insured, it is legally entitled to the insurance proceeds under a resulting trust theory because William's payment of two policy premiums from his personal account was a loan.[6] The only evidence on the supposed loan, however, was William's testimony, and the statement of decision explains, "The court does not find William's testimony at trial that he made the payments as a loan to Brookmead [Partners] credible."

Brookmead Partners gives short shrift to the court's credibility finding, erroneously calling it "gratuitous." In determining whether a resulting trust exists, " ' "the credibility and weight of the evidence are exclusively for the trial court." ' " (*Islas v. Islas, supra,* 213 Cal.App.2d at p. 416.) Because the court had the opportunity to observe

---

5    Brookmead Partners incorrectly asserts the resulting trust issue is a legal issue subject to de novo review based on undisputed evidence. Given the court's rejection of William's testimony, it is a factual matter subject to a substantial evidence standard of review. (*Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 391.)

6    Brookmead Partners asserts it raises two issues on appeal, whether the trial court erred by finding it was not entitled to the insurance proceeds because it was not a named insured under the AAA policy, and whether the court erred by rejecting its resulting trust theory. The issues, however, are intertwined because Brookmead Partners' only claim to the proceeds is the resulting trust theory.

William's demeanor when he testified, we give "great weight" to its credibility finding. (*In re Price* (2011) 51 Cal.4th 547, 559.)

Brookmead Partners cites Evidence Code section 411 for the proposition that "the direct evidence of a single witness is sufficient to prove any fact." Evidence Code section 411 actually states "the direct evidence of one witness *who is entitled to full credit* is sufficient for proof of any fact." (Italics added.) "The testimony of one witness, *if believed*, is sufficient to prove any fact." (*People v. Vega* (1995) 33 Cal.App.4th 706, 711, italics added.) Additionally, Brookmead Partners cites *La Jolla Casa de Manana v. Hopkins* (1950) 98 Cal.App.2d 339, 345, which explains "that uncontradicted and unimpeached testimony of a witness which is *not inherently improbable*, cannot be arbitrarily disregarded and should be accepted as true by the trier of facts where it is not found that the testimony was false." (Italics added.)

The court obviously found William's testimony inherently improbable. As the statement of decision explains, the "premium checks themselves do not show any indication that the premiums were paid on behalf of Brookmead [Partners] or that the money was a loan from William to Brookmead [Partners]. . . . Nor could William's personal payment of the premiums be reasonably inferred to be on behalf of Brookmead [Partners] since he testified that he only had an indirect 3-4% interest in Brookmead [Partners]. . . . [Brookmead Partners'] apparent failure to fulfill [its] own contractual obligation to maintain fire insurance creates a counterintuitive conclusion to [its] right to the insurance proceeds." (Italics added.) Additionally, when AAA sent William the insurance check made payable to him and Saracia, he did not notify AAA that

13

Brookmead Partners was the insured. Rather, he attempted to cash it by depositing it into his personal account.

Additionally, the statement of decision explains: "Brookmead [Partners], a legal entity with no money, and its predecessor entities, were all created primarily for tax purposes related to the property. . . . The court can think of no legal or logical reason why Brookmead [Partners], or any of its predecessor entities, would carry a policy for the loss of personal property."

Further, in assessing William's credibility the court was not required to ignore that he and Saracia have been embroiled in contentious litigation for years, and he has a history of breaching his fiduciary duty to her. Indeed, on appeal he candidly asserts he is "aggrieved" because by awarding the insurance proceeds to him, "the trial court made the funds susceptible to collection efforts" by Saracia. It was undisputed at trial that William had not paid Saracia for her one-half interest in the Brookmead property.[7]

We conclude substantial evidence supports the court's credibility finding, and thus William's testimony has " ' "no more effect than if it had not been given. It disappears from the case . . . ." ' " (*Wise v. DLA Piper LLP (US)* (2013) 220 Cal.App.4th 1180, 1192.) As his testimony was the only evidence pertaining to the supposed loan to

---

[7] Saracia's attorney advised the court "she has not been paid. She has no prospect of ever being paid by [William] because he has spent a lifetime making himself judgment-proof." Brookmead Partners claims the Brookmead property "was transferred in the manner it was, and ultimately ended up in the name of Brookmead Partners . . . as part of a sophisticated tax and estate plan agreed to by William and Saracia during their marriage." The claim is rather astounding given Saracia's testimony she was unaware of Brookmead Property's existence until the dissolution proceedings began, and the court's finding that her testimony was credible.

Brookmead Partners, we also conclude substantial evidence supports the court's rejection of the resulting trust theory. We agree Brookmead Partners was not entitled to declaratory relief.

DISPOSITION

The judgment is affirmed. Saracia is entitled to costs on appeal.

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

McDONALD, J.

15